## THE PEOPLE EX REL. RICHARDSON V. SPRUANCE.

1. Under the act of March 8, 1883, to promote and encourage horticulture and forestry in the state of Colorado and to establish a bureau of horticulture, the Colorado State Horticultural Society was constituted a bureau of horticulture provided the society accepted and carried out the provisions of the act.

2. By the acceptance of the act on the part of the Colorado State Horticultural Society, it became a state bureau under the control of the state, and may be subject to the absolute control of the state whenever the legislature so determines.

3. The society is not within the constitutional inhibition of section 34, article 5, of the constitution, forbidding appropriations to charitable and other incorporations not under the absolute control of the state.

4. The matter of incurring expenses by the society, of adjusting, settling, approving and allowing the same, is to be left to the officers of the society, and the sum of $1,000 is to be paid annually by the state treasurer upon a warrant drawn by the auditor of state upon the order of the society, the auditor being duly satisfied of the due acceptance of the provisions of the act by the society.

5. The act of 1883, creating the bureau and appropriating $1,000 annually therefor, does not operate in itself to make the appropriation, such as is required by the provisions of the constitution, nor does it effect a perpetual appropriation annually of the sum named, but merely grants authority for such appropriation, by a separate bill for that purpose. Such appropriation must be made at each successive legislative assembly, and the purpose must be clearly expressed in the title of the bill.

PETITION for *mandamus*. The facts are stated in the opinion.

Mr. S. A. OSBORN, for relator.

Attorney-General T. H. THOMAS, for respondent.

STONE, J. The petitioner, as "president of the Colorado State Horticultural Society and Bureau of Horticulture," seeks to compel the respondent, as state auditor, to draw a warrant upon the state treasurer for the sum of $1,000, for the use of said Horticultural Society. The authority upon which the petitioner predicates the duty of the auditor to act in the premises is based upon the act of March 8, 1883 (Sess. Laws 1883, p. 210), entitled "An act to promote and encourage horticulture and forestry in the state of Colorado, and to establish a bureau of horticulture."

The first section of the act declares "That the Colorado State Horticultural Society be and is hereby constituted a bureau of horticulture for the purposes hereinafter set forth, provided that the said Horticultural Society shall accept of and carry out the provisions of this act." The act then proceeds to set forth the general purposes of the society, or bureau, its duties, the time and place of its meetings for the transaction of business, the election of officers, etc. It requires that reports of the proceedings of the society shall be made, prescribes what the reports shall contain, and that a specified number of topics of such reports shall be published and distributed to the various offices and departments of the state, and certain designated institutions, societies and persons.

The sixth and seventh concluding sections of the act are these:

"SEC. 6. To enable the said bureau to carry out the provisions of this act, the sum of $1,000 is hereby appropriated annually out of any moneys not otherwise appropriated."

· "SEC. 7.    If the said Horticultural Society shall accept of the provisions of this act, they shall certify their acceptance of the same to the secretary of state and state auditor.    After said acceptance the state auditor shall annually, on the 1st of June, on the order of said society, signed by the president and secretary of said society, draw a warrant on the state treasurer for the aforesaid sum of $1,000; provided, should the said horticultural bureau fail to carry out the provisions of this act during any one year after the 1st day of April, 1883, then, and in that event, the aforesaid warrant shall not be drawn for that year."

The petition avers an acceptance of, and compliance with, all the provisions of said act; alleges a proper demand and order upon the auditor for the issuance of a warrant for the said sum of $1,000, and a refusal by the auditor so to do.

In support of his demurrer to the petition, the attorney-general contends:

· *First.*    That the society is not of that character which would authorize an appropriation of the moneys of the state in its support, in that it is not shown to be a society or institution "under the absolute control of the state."

*Second.*    That bills for the expenses incurred by the society, and to be defrayed by the sum demanded, have not been presented to the auditor for auditing and allowance.

*Third.*    That no specific appropriation has been made by the legislature for this purpose.    Upon the first point we are cited to section 34 of article 5 of the state constitution, which forbids appropriations for "charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state;" and we are referred to the annual reports of this society, by stipulation filed with the briefs of counsel, to show that said society elects its own officers, transacts its own business through them and its own

agents and employees, and for its own benefit, or the benefit of a particular class, without the immediate and absolute control and direction of the state.

The act of March, 1883, relating to this society, constitutes it a "bureau of horticulture," a "state bureau," and subjects it to certain requirements, so as to clearly indicate an intention to make it a bureau or institution of the state, for the obvious benefit to be derived by the state therefrom. By said act and its acceptance as aforesaid, it is brought under the control of the state, so far as the legislature has chosen to enact, and if not under its "absolute" control in respect to the choice of officers and the detail of proceedings within the scope of its purposes, it certainly *may* be subjected to such absolute control whenever the legislature so chooses. The said society is therefore, in our opinion, not within the constitutional inhibition referred to, and is constitutionally capable of receiving the benefits of such appropriation. We find nothing in the published reports of the society submitted for our inspection inconsistent with the legitimate purposes of the organization, the legislation relating thereto, or opposed to the views above expressed.

The petition avers, and the printed reports' show, that said reports, covering the transactions of the society for the years 1882, 1883, 1884 and 1885, were accepted by the secretary of state, and by that officer published in pursuance of the act of the general assembly in question.

Upon the second point of objection the demurrant contends that expenses incurred on behalf of this society are embraced within the provisions of section 1 of the act of March 25, 1885, which, *inter alia*, declares that, " All bills for expenses of every kind or nature whatsoever, incurred by or on account of the state, or any department thereof, shall be presented to the state auditor, and if found correct, shall by said auditor be audited and allowed."

We do not think this provision of the statute is in-

tended to apply to other matters than those embraced within the meaning of the language employed, to wit: "The state or any department thereof," and it cannot well be claimed that this society is in any such sense as is here meant a department of the state. Besides, the act authorizing the appropriation in question seems to contemplate that the specific sum of $1,000 in gross is to be paid to the use of the society annually, upon the condition only, as set forth in the first and last sections of the act, that the society accept the provisions of the act, and fully comply with all the stated requirements thereof. The matter of incurring expenses by the society, of adjusting, settling, approving and allowing the same, appears to be left to the proper officers of the society, and the sum of $1,000 annually is to be paid by the state treasurer upon a warrant drawn by the state auditor upon the order of the society, signed by the president and secretary thereof, and the duty of the auditor is not made to extend beyond seeing that the due acceptance of the provisions of the act by the society is certified to him and to the secretary of state, and thereupon to draw his warrant for the sum specified in the act to be paid annually. At all events, the legislature has required this and no more, and we cannot judicially extend it to embrace what is not expressed or clearly implied.

The third point of objection, that there has been no appropriation for the purpose, we think is well founded. By reference to the acts of the general assembly it will be seen that no sum for this purpose is included in the general appropriation bills under any head therein, nor could it be so included without violating section 32 of article 5 of the constitution, which provides that "the general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the state, interest on the public debt and for the public schools. All other appropriations shall be made by special bills, each em-

bracing but one subject," and the section immediately
following declares that "no money shall be paid out
of the treasury except upon appropriations made by
law." * * *

No separate bill for the support of this society has been
passed, or specific appropriation therefor made, and the
petition fails, therefore, to show that the auditor has any
authority to draw the warrant in question.

The act of 1883, creating the bureau and appropriating
$1,000 annually therefor, does not operate in itself to
make an appropriation such as is required by the provis-
ions of the constitution above quoted; it does not effect a
perpetual appropriation annually of the sum named with-
out other act of the legislature.   In effect, its proper
meaning is merely that, "to enable," etc., there shall be
appropriated by the general assembly at each session
thereof an annual sum of $1,000 "out of any moneys,"
etc.   In short, it is but the granting authority for such
appropriation, but the specific appropriation itself, or set-
ting apart from the general fund of the state treasury by
a separate bill for that purpose, which shall be clearly
expressed in the title, must be made by each successive
legislative assembly, the same as is required and done for
every department and institution of the state, except
those designated to be included in the general appropria-
tion bill, and those, perhaps, for the support of which a
special fund is provided by an annual state tax levied for
the particular purpose.   The omission to make the spe-
cific appropriation to this society, as authorized by the
act of 1883, was doubtless an oversight upon the part of
the general assembly of 1885, or the result of a miscon-
ception of the effect of section 6 of said act, such omission
necessitating future action by the legislature in that
behalf.

Since the petition fails to show that a specific appropri-
ation by separate bill, as the constitution requires, has
been made of such sum for the purpose, it follows that

no legal duty is shown to exist on the part of the respond-
ent auditor to do and perform what is prayed to be en-
forced by the mandate sought, and hence, no sufficient
cause for the issuance of the writ being shown by the
petitioner, the demurrer is sustained.

*Demurrer sustained.*