[No. 7569.]

LEDDY v. CORNELL.

1. STATUTES CONSTRUED—*Continuing Appropriations*—·An appropriation of public moneys will not be inferred from doubtful or ambiguous language—(193).

A statute creating a commission and authorizing it to appoint a secretary, and providing that "he shall be paid a salary not to exceed" a specified sum annually, cannot be construed to create a continuing appropriation for any amount whatever—(194).

The circumstance that, by the statute, a fund derived from certain fees was provided, in addition to the general fund, to which resort might be had, for the payment of the salary in question is an additional ground to refuse to the statute the effect contended for.  Until legislation fixing both the amount appropriated, and the fund or funds from which payment shall be made, the auditor of state is without authority to draw any warrant for the secretary's salary—(194, 195).

ATTORNEY GENERAL—*Opinions*—*Effect*—An opinion of the attorney general is not conclusive against the·state, and, when without support in law will not be followed by the court—198).

*Error to Denver District Court.*—HON. HUBERT L. SHATTUCK, Judge.

HON. BENJAMIN GRIFFITH, Attorney General, for plaintiff in error.

Messrs. EDWIN VAN CISE, FRANK L. GRANT and PHILLIP S. VAN CISE for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

In 1907 the legislature passed an act relating to civil service, which provided, among other things, that the governor should appoint three persons as civil service commissioners to perform certain duties therein specified. Section 3 is as follows:

"They (the commissioners) may appoint a secretary who shall be chief examiner, who shall superintend under their direction any examination under this act, and perform such other duties as they may prescribe. The secretary shall be paid a salary not to exceed eighteen hundred dollars a year, and his necessary traveling expenses actually incurred in the discharge of his official duties. They may also employ such other clerical assistance as may be necessary to carry out the provisions of this act."

Section 12 provides:

"Every applicant for examination, except unskilled laborers, shall pay the state treasurer the sum of one dollar, to be placed to the credit of the commission. in a special fund for the purpose of defraying so far as possible, the expenses to be incurred hereunder, and no one shall be examined until he or she exhibits the treasurer's receipt therefor."

In addition to the foregoing provisions of the act the following constitutional and statutory provisions are more or less involved in the question at issue, to wit: Section 32, article V, of the constitution:

"Appropriation bills.—The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the state, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject."

Section 33, article V, of the constitution:

"Disbursement of public money.—No money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof."

Section 6236, Revised Statutes of Colorado, 1908:

"Shall draw warrants on appropriation.—Sec. 91. In all cases of accounts audited and allowed against the state, and in all cases of grants, salaries, pay and expenses, allowed by law, the auditor shall draw a warrant on the treasurer for the amount due, in the form required by law; *Provided,* An appropriation has been previously made for such purpose."

Section 6237, Revised Statutes, 1908:

"No warrant unless appropriation.—Sec. 92. No warrant shall be drawn by the auditor, or paid by the treasurer, unless the money has been previously appropriated by law; nor shall the whole amount drawn for or paid under one head ever exceed the amount appropriated by law for that purpose."

The commission appointed the plaintiff, Herbert W. Cornell, its secretary and fixed his salary at eighteen hundred dollars a year. The eighteenth general assembly failed to make any appropriation for that department at all. The commission approved vouchers for the secretary's salary for the months of February, March, April and May, 1911, aggregating $600. These were presented to the state auditor for payment out of the general

fund of the treasury, as state officers are paid. The auditor declined to issue warrants, on the ground that no appropriation had been made to pay this salary and there was, therefore, no money available for that purpose. Whereupon the secretary filed his complaint in the district court of the city and county of Denver to mandamus the state auditor to draw warrants for these vouchers. An alternative writ issued, and the auditor demurred to the complaint and writ upon the grounds that neither stated a cause of action, because it appeared therefrom that no appropriation had been made for the payment of the claims. The demurrer was overruled, the defendant declined to plead further, and elected to stand by the case as made on the law question thus raised. Thereupon there was judgment for a peremptory writ against the auditor, commanding him to draw warrants in payment of the vouchers. Objections were made and exceptions reserved to the ruling of the court on the demurrer and to the judgment entered, and the defendant brings the case here for review on error.

The contention of plaintiff was and is that, by the provisions of section 3 of the act, there is a continuing appropriation, and that it is the duty of the state auditor to draw warrants accordingly, without further legislative expression upon the subject. This the defendant controverts, and thus is presented the only question for consideration and determination.

The doctrine of continuing appropriations has been recognized and approved by this court. The question is whether this act, by the following provision: "The secretary shall be paid a salary not to exceed eighteen hundred dollars a year, and his necessary traveling expenses actually incurred in the discharge of his official duties," which is the only reference therein to compensation for

the secretary of the commission, considered in connection with other provisions thereof, brings itself within the rule respecting such appropriations adopted by this court.

In 18 Colorado Report, at page 193, *In re continuing appropriations,* it is said:

"While it is necessary that something more than a duty to pay must be shown, no set form of words is necessary to constitute an appropriation. It is sufficient in this regard, if the legislative intention clearly appears from the language employed. In no instance will an appropriation be inferred from doubtful or ambiguous language."

In *Institute v. Henderson,* 18 Colo. 98, at page 102, upon this subject it is further said:

"The case of *Ristine, Auditor, v. The State of Indiana,* reported in 20th Indiana reports, commencing at page 337, will be found an exhaustive and valuable review of this provision. In the course of the opinion the court says:

'A promise by the government to pay money, is not an appropriation. A duty on the part of the legislature to make an appropriation is not such. A promise to make an appropriation, is not an appropriation. The pledge of the faith of the state, is not an appropriation of money with which to redeem the pledge. Usage of paying money in the absence of an appropriation, cannot make an appropriation for future payment. The question is to be settled upon the meaning of the constitution. Usage may be evidence of the meaning the administrative officers have put upon that instrument, and, as such, entitled to respectful consideration, but it is no binding interpretation; and the late usage was, in fact, probably commenced without consideration.' See also *People ex rel v. Spruance,* 8 Colo. 530.

The necessity for an appropriation in each instance is dwelt upon in the opinion, and it is shown that an appropriation is not to be inferred from doubtful or ambiguous language."

By no process of reasoning can it be held that the words of the act above quoted, considered in the light of the whole act, show a clear, or any, purpose on the part of the legislature to create a continuing appropriation. Something more than a mere duty to pay must be shown. The act itself does not fix the specific amount which the secretary is to receive, but merely places a limit beyond which no legislature in the future may go, until the act is amended, in making appropriations for its payment. No definite amount as salary is fixed by the act, and the legislature was without information as to what it might be. Indeed, the commission is not directed by the statute to appoint a secretary at all, but has power to do so should there be occasion. A secretary might never have been appointed and a salary might never have been required. In view of these facts, how can it fairly be said that the legislature created a continuing appropriation? The situation being thus uncertain, at the time the act was passed, as to the amount of the salary, or as to whether there would ever be necessity for a salary, under the authorities cited, it will not be assumed that a continuing appropriation by the legislature was created to cover its payment.

It further appears from the act that the commission is empowered to collect a certain sum from each applicant, who submits to it for examination for a civil service position, the money so received to go to a special fund to be used to defray the expenses of that body to the extent that it might do so. It follows, therefore, that there were and are two funds upon which the legislature might draw

for the payment of this salary, and the other expenses of the commission, namely, the special fund and the general state fund. Under this state of facts it was the duty of the state legislature to designate the particular fund from which payment should be made. The fact that neither fund is designated, in and of itself alone, is sufficient to show that no continuing appropriation was intended. It is unreasonable and illogical to assume that the legislature has made a permanent appropriation, in a specific amount, for an unknown salary, leaving the source from which the money is to come wholly problematical, where it might, on proper legislation, lawfully be drawn, in whole or in part, from either of two funds. Under such circumstances it naturally follows that additional legislation was necessary to fix the specific amount appropriated, and the fund or funds from which payment should be made, agreeable to both constitutional and statutory requirements. No such legislation having been enacted, the auditor was without authority to draw the warrants demanded, and properly declined to do so.

Furthermore, the decision in *People ex rel. v. Goodykoontz,* 22 Colo. 507, is decisive of this case. The question of continuing appropriations with reference to the payment of the salaries of public officers was there fully considered. In that case it was shown that in the year 1889 the legislature established the office of steam boiler inspector. The act provides that, "Said inspector shall receive an annual salary of two thousand five hundred (2,500) dollars and mileage at ten cents per mile, payable as other state officers." In the year 1893 the legislature failed to make an appropriation for the salary and expenses of this officer. The auditor refused to issue warrants in payment thereof, because of the failure of the appropriation, and that officer brought mandamus to

compel payment. The court, at page 511, has this to say:

"In the case at bar, however, there is no intention to make the salary of the inspector subject to further legislation to be inferred from anything expressed in the act. It reads: 'Said inspector shall receive an annual salary of two thousand five hundred (2,500) dollars and mileage at ten cents per mile, payable the same as other officers of the state;' and by other acts then and now in force, other state officers are paid in monthly installments at the end of each and every month, the auditor being required upon request to draw warrants upon the state treasurer for such salaries. Nothing is left indefinite and uncertain under these provisions."

The decision, approving that act as creating a continuing appropriation, was based upon these words found therein, "payable as other state officers," as it was there held that with this provision present nothing was left indefinite and uncertain in the law. The act was held to create a continuing appropriation, solely because the time and method in which, and the fund from which, the salary was to be paid were distinctly pointed out. The court laid special stress upon the words "payable as other state officers;" indeed, it seems to have based its conclusion, that the appropriation is a continuing one, solely upon that provision. That this is so abundantly appears from its language at the bottom of page 511, where it is said:

"The object of the constitutional provision inhibiting the payment of money from the state treasury, except by an appropriation made by law, etc., is to prohibit expenditures of the public funds at the mere will and caprice of the crown or those having the funds in custody, without direct legislative sanction therefor; but no such evil need be feared, where, as in this case, the salary

of the officer is fixed, together with the time and method of his payment. And we conclude that the act creating the office of state boiler inspector and fixing his salary, when considered in connection with other statutes, designating the time, mode and manner of payment, constitutes a continuous appropriation for such salary, and that ·no further legislative sanction is necessary to authorize the proper officers to pay the same."

So it was there held that where the salary is fixed, and the time and method of payment are designated, a continuing appropriation is created, which does away with the necessity of further legislative action to authorize payment. The converse of the proposition must be true: that is, that no continuing appropriation is created where, as in this case, the amount of the salary is not fixed, and there is neither a designation of the time and method of payment nor of the fund from which payment is to be made. We are clearly of opinion that by this act no attempt even was made to establish a continuing appropriation, and if there was such an attempt, it utterly failed, because lacking in practically every essential to accomplish the result.

There is not an authority in the books holding, upon facts like those in the case at bar, that a continuing appropriation is made. This case, under its facts, is clearly distinguishable from every case upon which plaintiff relies. It would be a waste of time to discuss and distinguish in detail the cases one by one. The distinguishing features are so plain and clear that they must be readily apparent to any one upon even cursory examination.

In *People ex rel. v. Goodykoontz, supra,* the court refers to an opinion of the attorney general of Indiana, upon the authority of which, in an opinion by the attorney general of this state, certain salaries were paid notwith-

standing the statute creating them did not fix the time and mode of payment. We express the view that the court, in that case, merely wished to emphasize, by referring to those opinions, that the doctrine of continuing appropriations had been recognized by the executive officers of this state as not being in conflict with the constitution. The court certainly did not intend to approve the contention that a continuing appropriation is created by an act in which the time and method of payment are not fixed, because no such question was then before it.

It is also urged that a former attorney general of this state rendered an opinion to the effect that this particular statute creates a continuing appropriation. Respecting that opinion, it is sufficient to say that, while it is persuasive, it is neither conclusive nor binding, and since it seems to be without authoritative legal support, it should not be approved or followed.

The judgment is reversed and the cause remanded to the district court, with directions to dismiss the complaint and writ.

*Decision en banc.*

CHIEF JUSTICE CAMPBELL not participating.