**STATE of Oklahoma ex rel. L. G. HAWKINS, Plaintiff,**

v.

**OKLAHOMA TAX COMMISSION and Leo Winters, State Treasurer of Oklahoma, Defendants.**

**No. 42952.**

Supreme Court of Oklahoma.

July 29, 1969.

Rehearing Denied Dec. 23, 1969.

Allen G. Nichols, Wewoka, and John W. Young, Sapulpa, for plaintiff.

G. T. Blankenship, Atty. Gen., for defendants.

J. Harry Johnson, Chief Counsel, Dept. of Public Welfare, Oklahoma Public Welfare Commission, for intervenors.

Milton R. Elliott, Oklahoma City, Chief Atty. for Oklahoma Employment Security Commission, Durward K. McDaniel, Washington, D. C., Oklahoma Federation of the Blind, Sam Hill and Moraul Bosonetto, Oklahoma City, State Insurance Fund, John W. McCune, Tulsa, Attorney and Member of Oklahoma Legislature, amici curiae.

JACKSON, Justice.

The primary question for decision is whether the revenues derived from gasoline excise taxes levied by the provisions of 68 O.S.Supp.1967, Sections 502, 516, and 522, and apportioned in the same act for specific purposes by Sections 504, 519, and 523 (adopted in 1963), may be disbursed and payments made therefrom more than two and one-half years after the passage of the appropriation act.

The question arises by reason of a formal opinion of the Attorney General in response to questions presented to him by a member of the State Senate.

In his formal opinion the Attorney General concluded that Sections 504, 519, and 523, constitute appropriations by law within the meaning of Article 5, Section 55, Oklahoma Constitution, citing Edwards v. Childers, 102 Okl. 158, 228 P. 472, and no issue is made of that conclusion.

In answer to the primary question of whether these excise tax revenues may be disbursed and payments made therefrom more than two and one-half years after the passage of the act in 1963, the Attorney General concluded that no valid disbursements may be made following two and one-half years after the passage of the act in view of Art. 5, Sec. 55, Oklahoma Constitution, which provides:

"No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management * * * unless such payments be made within two and one-half years after the passage of such appropriation act * * *."

This original action is brought by the State of Oklahoma, ex rel., L. G. Hawkins,

as plaintiff, against the Oklahoma Tax Commission and Leo Winters, State Treasurer, to prevent them from following the Attorney General's opinion and to compel them to apportion and pay all gasoline tax revenues as directed by the taxing and apportionment statutes above cited. We assume jurisdiction. State ex rel. Board of Education of City of Sapulpa v. State Board of Education et al., 197 Okl. 324, 170 P.2d 540; State ex rel. Babb v. Mathews, 134 Okl. 288, 273 P. 352; State ex rel. West v. Cobb, 24 Okl. 662, 104 P. 361, 24 L.R.A., N.S., 639.

In State ex rel. Board of Commissioners of Harmon County v. Oklahoma Tax Commission, 191 Okl. 155, 127 P.2d 1052, and in Craig County Excise Board v. Texas-Empire Pipe Line Co., 195 Okl. 627, 159 P.2d 1003, we held in construing Art. 10, Sec. 19, Oklahoma Constitution, that gasoline excise taxes when collected and apportioned by statute for "constructing and maintaining county or township highways and permanent bridges in each county" could not be diverted to the general revenue funds of the state or county; and directed that the collected revenue from the gasoline tax be placed in the county highway funds for expenditure as directed by the statute which levied the tax and apportioned the revenue, even though more than two and one-half years had elapsed after the passage of the act.

In the Harmon County case the tax was levied and apportioned in 1937. Our decision was promulgated June 30, 1942, or five years after the passage of the act. In the Craig County case the tax appears to have been levied and apportioned in 1939, 68 O.S.1941, Secs. 659a and 659b. Our decision was adopted on July 3, 1945, six years after the adoption of the act. In the third paragraph of our syllabus in the Craig County case we held:

"Craig county of Oklahoma finances its county highways by means of a cash fund derived from excise taxes of the State of Oklahoma. At the close of the fiscal year of 1943–44 it had on hand in such fund a cash balance of $8,124.60. *Held* that such cash balance should be carried forward into the next fiscal year as an asset of the county highway cash fund and should be available for expenditure."

See also Application of Oklahoma Turnpike Authority, Okl., 359 P.2d 680, and Application of Oklahoma Turnpike Authority, Okl., 348 P.2d 510, wherein we held, among other things, that Oklahoma turnpike bond holders would have a vested right in certain gasoline tax revenue as it accumulates in the segregated Trust Fund pursuant to 69 O.S.Supp.1959, Secs. 680 and 683(a) and (b) without further or subsequent appropriations.

The inclusion of that part of Art. 5, Sec. 55, Constitution, supra, which provides that no money shall be paid out of the treasury of the State, unless made within two and one-half years after the passage of the appropriation act, was intended for some useful purpose. One useful purpose was to enable the Legislature to ascertain at each biennial session the amount of *surplus* revenues that would be available for appropriation during the next biennium. In order to do so it was necessary to establish a terminal date upon the effectiveness of prior appropriations. This was especially true as applied to general fund appropriations from which the three branches or departments of government are financed. Art. 5, Sec. 56, Constitution. In 81 C.J.S. States § 162, at page 1205, it is said:

"General funds, available for general state purposes, which are deposited in the state treasury, *are subject to constitutional requirements as to appropriations with respect to their disbursement,* and this is true regardless of the source from which such funds are derived." (Emphasis supplied.)

However, as to special funds apportioned or earmarked for special purposes, it is said (pages 1205 and 1206):

"While there is some authority holding that constitutional provisions as to appropriations apply to special funds,

*  *  * *it is generally held that constitutional provisions as to appropriations do not apply as to special funds devoted to special purposes."* (Citing cases from Kansas, Louisiana, Mississippi, Montana, Oklahoma, Texas, and Washington.) (Emphasis supplied.)

In the body of the opinion in State ex rel. State Aeronautics Commission v. Board of Examiners of State, 124 Mont. 402, 194 P.2d 633, 638, it was said:

"Is this fund subject to the provisions of section 12, Article XII of the Constitution to the effect that 'no appropriation of public moneys shall be made for a longer term than two years' and to the provisions of section 10, Article XII that 'no money shall be drawn from the treasury but in pursuance of specific appropriations made by law' and to the similar provision of section 34 of Article V. This court has repeatedly held that these sections of the Constitution have no application to special or trust funds which have never been placed in the general funds of the state."

In the body of the opinion in Edwards v. Childers (1924), 102 Okl. 158, 228 P. 472, 477, after noting a distinction (p. 475) between that case and the case of Menefee v. Askew, infra, we said:

"Our attention is called to the provisions of article 5, § 55, of the Constitution, which provides that no money shall be paid out of the state treasury or any of its funds 'unless such payments be made within two and one-half years after the passage of such appropriation act.' It is urged that, under the provisions of the statutes under consideration, the appropriation of the fund so created continues as long as the act remains in force. The parties have referred us to no case squarely in point, and we have found none applying this limitation to a case where the appropriation is that of a special fund created by a continuing special tax, the whole of which is dedicated to a single purpose."

In Menefee v. Askew (1910), 25 Okl. 623, 107 P. 159, 27 L.R.A.,N.S., 537, supra, we recognized that the sole issue was whether the statute in question constituted an appropriation satisfactory to the provisions of Art. 5, Sec. 55, supra. After holding that an appropriation had been made we added the following dictum: (107 P. p. 162)

" *  *  * But when considered with the limitations of Section 55, art. 5, Const., supra, and section 56, which (sec. 56) provides that: 'The general appropriations bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the state, and for interest on the public debt. The salary of no officer or employee of the state, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law'—clearly shows that a continuing appropriation is not permissible under our Constitution. In none of the authorities that we have been able to find, where a continuing appropriation was permitted, were such sections as 55 and 56, art. 5, supra, contained at that time. See, also, People ex rel. Richardson v. Spruance, 8 Colo. 530, 9 Pac. 628; In re Continuing Appropriations, 18 Colo. [192] 195, 32 Pac. 272. The result is that such appropriation is effective only for 2½ years after the passage of said act by the Legislature."

In our present consideration of the quoted statement from Menefee we notice that Sections 55 and 56, Const., are cited as supporting the conclusion that "it is clearly shown that a continuing appropriation is not permissible under our Constitution", but it is also noticed that section 56 was quoted in support of that conclusion. Since section 56 is quoted as the authority for the conclusion that "a continuing appropriation is not permissible" it seems possible that we were referring to the general appropriations bill financed by the general revenues of the state. If this is so, we are

in complete agreement that general appropriations for the expenses of the executive, legislative, and judicial departments of the state are effective only for two and one-half years after the passage of the general appropriations bill. This analysis of the Menefee case may also explain why the Court was unable to find any authorities holding that a continuing appropriation was permissible. Menefee cites no case involving a special fund created for a special purpose and dedicated by the act to a particular use.

We have examined the Colorado cases cited in Menefee and it does not appear that Colorado has a constitutional provision limiting expenditures of an appropriation for a specified time.

The Kansas Constitution has a constitutional provision providing that "no appropriation shall be for a longer term than two years." *Const. art. 2, § 24.* In *State ex rel. Boynton v. Kansas State Highway Commission, 139 Kan. 391, 32 P.2d 493,* that court held that their constitutional provision had no application to public funds not *required* to be paid into the state treasury.

■ Considering the number of cases wherein this court has approved the expenditure of special funds earmarked for a special purpose more than two and one-half years after the passage of appropriation acts it is apparent we have held in effect that the time limitation upon the expenditure of an appropriation imposed by Art. 5, Sec. 55, Const., is not applicable to revenues levied and earmarked for a specific purpose which have accrued in a special fund. To that limited extent our decisions are consistent with the general rule as expressed in 81 C.J.S. States § 162, supra. The confusion has arisen because of the time limitation imposed by Art. 5, Sec. 55, which we now believe was intended to apply to general fund appropriations, and Art. 10, Sec. 19, Const., which provides:

"Every act enacted by the Legislature * * * levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for

one purpose shall ever be devoted to another purpose."

The practice of levying special taxes for special purposes and allocating or appropriating all or specified percentages of the revenue to specific purposes has been followed by the Legislature for many years. H.B. 492, S.L.1908; S.B. No. 2, S.L.1909; H.B. No. 187, S.L.1915; and H.B. No. 503, S.L. 1923, are among the earlier ones. Our former decisions have not prevented that practice.

It must be assumed that the legislators were aware of the constitutional two and one-half year limitation upon expenditures of appropriations at the time they framed the amendment to Art. 10, Sec. 23, Okla. Constitution. That amendment, known as the "Budget Balancing Amendment", was framed by the Legislature and submitted to the people in 1941. House Joint Resolution No. 10, S.L.1941, page 547. After the amendment was adopted it was vitalized by the same Legislature which drafted the amendment. H.B. No. 461, S.L.1941, page 273. That amendment recognizes that there will be "special funds" separate and apart from the General Revenue Fund; that there may, or may not be, any surplus in a special fund; that if there is a surplus in a special fund it may be appropriated; that there may be special funds in the hands of the State Treasurer at the end of the biennium which have been "previously appropriated"; that future revenues accruing in special funds, and surpluses therein, if any, may be transferred "from one fund to another;" and that some agencies of the State will be operating on revenues derived from taxes which are allocated to such agencies. For convenience we quote and emphasize pertinent provisions of Section 23, which we believe support the statements we have just made:

"(T)he State Board of Equalization shall make an itemized estimate of the revenues to be received by the State under the laws in effect at the time such estimate is made for each year * * * *showing separately the revenues to accrue to* the credit of the General Revenue

Fund and *each special fund of the State,* and the total amount of such estimate for each fiscal year shall not exceed the average total revenue *which accrued to each such fund* for the three (3) last preceding fiscal years, *to which amount shall be added the cash surplus, if any, from the preceding fiscal year* in the hands of the State Treasurer *to the credit of any such fund* and *not previously appropriated* by the State Legislature *at the time such estimate is made.* * * * The Legislature shall not pass or enact any bill, act or measure making an appropriation of money for any purpose until such estimate is made and filed * * * and all appropriations made in excess of such estimate shall be null and void; Provided, However, that *the Legislature may* at any regular session or special session called for that purpose, *enact laws to provide for* additional revenues, other than ad valorem taxes, or *transferring the existing revenues or surpluses from one fund to another,* whereupon it shall be the duty of the State Board of Equalization to make an estimate of the revenues that will accrue under such laws and to file the same with the Governor and with the President of the Senate and the Speaker of the House of Representatives, and the amount of any increase or decrease, resulting, for any reason, from such laws *shall be added to or deducted from each respective* fund, as the case may be.

" * * * Revenues deposited in the State Treasury to the credit of the General Revenue Fund *or of any special fund,* (which derives its revenue in whole or part from State taxes or fees) *shall* * * * *be allocated monthly* to each department, institution, board, commission or special appropriation *on a percentage basis,* * * * and no warrant shall be issued in excess of said allocation. *Any department, institution or agency of the State operating on revenues derived from any law or laws which allocate the revenues thereof to such department, institution or agency, shall not*

*incur obligations in excess of the unencumbered balance of surplus cash on hand.* * * *.

In the instant case it is apparent that all of the gasoline tax revenues were apportioned or "earmarked" for specific agencies and purposes by the provisions of 68 O.S. Supp.1967, Sections 504, 519, and 523, which was enacted in 1963, and there is no unappropriated cash surplus unless the object and purpose of the tax has been completely satisfied. This conclusion is supported by Art. 10, Sec. 19, Const., which provides that taxes levied for one purpose shall not be devoted to another, and our decisions in the Harmon and Craig County cases above mentioned. It is to be noted, however, that under Section 23, supra, the Legislature may now enact laws for transferring existing (future) revenues or surpluses from one fund to another without re-enacting the taxing statute. Art. 10, Sec. 19, Const. has been modified to that extent.

If there is any doubt as to whether the Legislature, in framing the amendment, intended to have constitutional approval for special funds for special purposes to be disbursed and payments made therefrom more than two and one-half years following the "appropriation act" we are authorized to examine legislation which vitalized the amendment.

In State ex rel. Kerr, Gov. v. Grand River Dam Authority (1945), 195 Okl. 8, 154 P.2d 946, the meaning of certain provisions of Art. 10, Sec. 23, Const., were under consideration. Therein we said that in construing a constitutional provision the object is to give effect to the intent of the framers and of the people in adopting it. We further said:

"Legislatures, like courts, must function within constitutional limitations, and it is to be presumed that it acts with a conscious regard thereof. Hence a legislative construction of the Constitution is deemed highly persuasive by the courts. Coyle v. Smith, 28 Okl. 121, 113 P. 944. This rule should have its most pronounced effect in instances like the pres-

ent where the construction is afforded by the Legislature that framed the amendment and must have been conversant with its intent."

In the title of H.B. 461, S.L.1941, vitalizing Sec. 23, Art. 10, Const., supra, we notice the following:

"AN ACT vitalizing the Constitutional Amendment to Section 23, of Article 10 of the Constitution; expressing Legislative intent; * * * providing for procedure in handling Special Funds; * * * providing procedure for handling earmarked funds; * * *."

Section 7 of the Act provides:

"Deposit of Allocated Funds. The allocation of cash deposited in the State Treasury to the credit of a special fund shall be deposited by the State Auditor directly to the credit of the cash account of the department, institution, or agency which operates from such special fund at the time the deposit is made."

Section 11 of the Act provides:

"Any department, institution, or agency of the State, operating on revenues derived from any law, or laws, which allocate the revenues thereof, to such department, institution, or agency, shall not incur obligations in excess of the unencumbered balance of surplus cash on hand. *Such funds shall be non-fiscal-year appropriations*, unless the Legislature has provided by law that the unencumbered balance at the end of the fiscal year shall be transferred to another fund. The State Highway Department shall operate under this Section and the State Auditor shall deposit the moneys received from the Federal Government for highway construction purposes to the credit of the cash account of the State Highway Department at the time the money is deposited to the credit of the State Highway Construction and Maintenance Fund.". (emphasis supplied)

What are non-fiscal-year appropriations?

"Non-fiscal-year funds" has two definitions under the provisions of Section 9 of the act, and we quote:

(1) "Non-fiscal-year funds shall be cash funds of any agency of the State which does not incur obligations against such funds in excess of the unencumbered balance of surplus cash on hand, and where the balance at the end of any fiscal year remains by law in the same fund for the subsequent fiscal year."

(2) "Non-fiscal-year funds shall also include appropriations from the General Revenue Fund for the construction of new buildings which, for the purpose of allocating revenue to its cash account, shall receive revenue only during the twelve months of the year for which they are appropriated. However, for contractual purposes, such funds may be contracted or expended any time within the two and one-half years provided by the Constitution before the appropriation shall lapse."

It is clear that definition No. 1, supra, refers to collected tax revenues, all of which are earmarked for specific purposes. There is no fiscal year, nor two and one-half year, limitation upon the expenditure of such funds where the balance at the end of any fiscal year remains by law in the same fund for the subsequent fiscal year.

Definition No. 2, supra, pertains to General Revenue Funds for the construction of new buildings and is not pertinent to our inquiry.

The 1941 Legislature's interpretation of Art. 10, Sec. 23, supra, as reflected in H.B. 461, S.L.1941, clearly approves a continuing appropriation or apportionment of a special fund arising from a special tax which is allocated or dedicated to a special purpose. Section 23 is susceptible to the construction placed upon it by the Legislature.

It is to be noticed that H.B. 461, S.L. 1941 (62 O.S.1941, Secs. 8.1–8.18, inclusive), was repealed in 1947, Senate Bill No. 36, S. L.1947, page 370, but this does not detract from the construction placed upon Sec. 23, Const., by the Legislature which framed it in 1941. However, it is also noticed that when the Legislature repealed H.B. 461, supra, in 1947 it enacted legislation requir-

ing stricter supervision over the special funds. 62 O.S.1961, Secs. 41.1 et seq.

Art. 10, Sec. 23, was amended in 1968 after being proposed by the Legislature in H.J.R. No. 551, S.L.1968, page 787, without change except that the itemized estimate of revenues to be received by the state is based upon the amounts received in each fund during the last preceding fiscal year, as distinguished from the average revenue accruing during the past three years as provided by the amendment in 1941.

From our examination of the session laws enacted since 1941, we find that the Legislature has appropriated the revenues from the excise taxes on gasoline to the State Highway Construction and Maintenance Fund at each regular session of the Legislature, and in some sessions has appropriated General Fund Revenues to supplement the construction and maintenance of state highways. This practice is not prohibited by the provisions of Art. 10, Sec. 23, Okla. Constitution.

Considering the foregoing it is the order and judgment of this court that the defendants, the Oklahoma Tax Commission and the State Treasurer should be, and accordingly are, ordered and directed to perform their statutory duties with respect to the apportioning and crediting of all money collected by the Oklahoma Tax Commission pursuant to the gasoline excise tax statutes directly involved herein and with respect to the payment to the various counties, cities, and towns of this state of any portion of such money which may be due any of them under those statutes.

It is the further order and judgment of this court that the defendants, the Oklahoma Tax Commission and the State Treasurer should be, and accordingly are, ordered and directed to perform their statutory duties with respect to the apportioning and crediting to the State Assistance Fund of all money collected by the Oklahoma Tax Commission which, under the applicable statutes, should be apportioned and credited to that Fund, and the State Treasurer is hereby ordered and directed to perform his statutory duties with respect to the payment of money out of the State Assistance fund.

IRWIN, C. J., BERRY, V. C. J., and DAVISON and WILLIAMS, JJ., concur.

BLACKBIRD, HODGES, LAVENDER and McINERNEY, JJ., dissent.

LAVENDER, Justice (dissenting).

I think the purpose of Article 5, Section 55 of Oklahoma's Constitution is clear. It is a limitation upon the exercise by the Legislature, of its control over money in the "Treasury of this State," * * * "its funds" * * * or, any of the funds under the management of the state. The constitutional prohibition therefore assumes a power or control over such funds to be in the Legislature. If, with regard to a certain fund, the Legislature has no power or control over its expenditure, then to me it seems logical that the constitutional limitations of Article 5, Section 55 are not applicable.

In determining the application of Article 5, Section 55, concern should be had with the nature of the funds involved. Simply because certain money is paid into the Treasury of the State and there retained for safekeeping, such money does not automatically become subject to the control of the Legislature regarding the circumstances under which it may be spent.

An example, that readily comes to mind, is money which constitutes trust money or funds held by the state (or its officers and agents) in a fiduciary capacity, or as a custodian. This would include money which, when received, belongs to someone or some entity other than the state.

Certainly there is no prohibition in the law against a state acting in a fiduciary capacity and in that capacity discharging its sovereign functions, nor does anything prevent it from acting as a custodian, with respect to funds belonging to someone else.

I believe, that upon careful consideration of Article 25 of Section 1 et seq. of

our State Constitution, together with 56 O.S.1961 § 178, the implementing legislation, it is reasonable to conclude that the State Assistance Fund is a trust fund, in the nature of a charitable trust, established and maintained by the State of Oklahoma for the purpose of relief for unidentified individuals who qualify as members of the broad, general classes of the public described in Section 1 of Article 25, supra. That group is there described as, "needy, aged persons who are unable to provide for themselves".

I am of the further opinion that a careful analysis of the gasoline tax act in question here, which appears as 68 O.S.Supp. 1968 §§ 501 through 528, will demonstrate that that portion of the tax thereby levied which is to be apportioned to the various counties and/or cities and towns of this state, in a certain and definite proportion, actually never becomes subject to the power of the Legislature once it is received; such funds are not to be spent by the state nor for its benefit (other than the incidental benefit to the state from the use of such money to maintain county highways and bridges). Such a tax was held valid in Pawnee County Excise Board v. Kurn (1940), 187 Okl. 110, 101 P.2d 614.

Under these circumstances, as such money is received it is merely held by the state as custodian for the benefit of the ones to whom such funds must be allocated and distributed and by whom, and for whose direct benefit, the money is to be expended.

Under my view of Article 5, Section 55, although I would exclude from its operation the State Assistance Fund and the monies designated by the above referred to tax act to be distributed to counties, cities and/or towns, I would include within its coverage other funds which, when received, are subject to disbursement for the exclusive benefit of the state and therefore, in every sense, constitute funds which belong to the state. This would include money collected under the above tax act which, when received, is to be credited to the Oklahoma Tax Commission Fund, or to the State Highway Construction and Mainte-

nance Fund. The fact that because of Article 10, Section 19, Constitution, the money in the last two mentioned funds could not be spent for any purpose other than the purpose designated in the taxing act, does not permit us to disregard the clearly expressed time limitations of Article 5, Section 55, upon the expenditure of the funds. The constitutional provisions are not incompatible. Article 10, Section 19, refers to the purpose for which public money may be expended and Article 5, Section 55, refers to the time within which it may be spent. Both provisions are valuable protective measures and could be treated as fully effective.

I respectfully dissent.

McINERNEY, Justice (dissenting).

I am unable to agree that the Constitution of Oklahoma either contemplates or permits the disbursement of public money collected from the levy of a revenue tax without the authority of an appropriation by law within two and one-half years preceding the disbursement.

Every act enacted by the Legislature levying a tax must specify the purpose for which the tax is levied, and to that extent is "earmarked", or it is void. Art. 10, § 19, Const. Meyer et al. v. Lynde-Bowman-Darby Co. et al., 35 Okl. 480, 130 P. 548. While the levy of the tax is governed, in part, by Art. 10, § 19 (in addition to other provisions not applicable here), the appropriation of the revenues estimated for collection from taxes is limited by Art. 10, § 23, and the expenditure of the appropriations is controlled by Art. 5, § 55.

The gasoline excise tax and the sales tax are revenue laws whose principal object is the raising of revenue, Anderson v. Ritterbusch, 22 Okl. 761, 98 P. 1002, and the funds accumulated from these taxes are for general state purposes; highways, Art. 16, § 1, and welfare, Art. 25, § 1.

Since *all* acts levying a tax must specify the purpose, it seems to me that the designation of a depository account in the state treasury other than the general revenue fund depository account would not suffice

to remove the many constitutional and statutory restrictions imposed on the expenditure of revenue raised pursuant to the levy of a revenue tax. In my opinion, the designation of a depository account amounts to nothing more than a proper bookkeeping arrangement for the convenience of the Treasurer, the Legislature, and the State Board of Equalization. It assures an accurate record of the condition of the fund necessary to accomplish the purpose specified by the tax levy. In other words, I do not believe that the *purpose* authorizes the expenditure of the revenue, but merely serves to justify the tax levy.

The legislative effort to limit appropriations within existing revenues, thereby eliminating the practice of operating state government by the issuance of non-payable warrants and deficiency certificates, as noted in Draper v. State Board of Equalization, Okl., 414 P.2d 276, 278, resulted in the adoption in 1941 of the constitutional amendment changing Art. 10, § 23. At the same session, the Legislature enacted the Budget Law of 1941, H.B. No. 461, S.L. 1941, page 273, vitalizing the "Budget Balancing Amendment, Art. 10, § 23". Later, the Budget Law of 1947, also vitalizing Art. 10, § 23, was enacted, 62 O.S.1961, § 41.1 et seq., imposing even greater restrictions on the expenditure of public funds than those contained in the Budget Law of 1941.

The Budget Law of 1947, in addition to the requirement of Art. 10, § 23 limiting the total appropriations to the estimated revenue to be received from all tax sources, provides for the approval of the Budget Director for allotments of the appropriations to the "spending agency", 62 O.S. 1961, § 41.7, § 41.9, and the approval of claims against the allotted portions of the appropriation by the Division of Central Accounting and Reporting, 62 O.S.1961, § 41.10. The absence of a current appropriation, as contemplated by Art. 5, § 55 and Art. 10, § 23, nullifies the thrust of Art. 10, § 23 and the Budget Laws, in my opinion, and leaves the amount of expenditure of public funds collected from these revenue laws to the discretion of the spending agencies.

The expenditure of public money is authorized in pursuance of an appropriation by law. The disbursement of appropriations is controlled, initially, by the Budget Law of 1947, pursuant to the mandate of Art. 10, § 23; ultimately, by Art. 5, § 55. I agree with the majority that the new Art. 10, § 23 removes any restraint on the Legislature transferring surpluses from one fund to another. But I do not agree that the mere existence of the fund, or depository account, legally justifies the disbursement of the fund without a current appropriation. In fact, the theory of a continuing appropriation would seem to contravene the mandate of Art. 10, § 23 that appropriations must be limited to the preceding year's revenue since such a theory would necessarily permit the expenditure of growth revenue, (Draper v. State Board of Equalization, supra), and, consistent with legislative direction made mandatory by Art. 10, § 23, prevent the Budget Director from reducing appropriations proportionately when the estimated budget resources are insufficient (Art. 10, § 23; 62 O.S.1961, § 41.6). Re-enactment of the tax levy or enactment of an appropriation by law each two years would satisfy the restraint of Art. 5, § 55. Nothing more is required; nothing less should be permitted.

My views are limited in scope to the taxing statutes, and revenue collected therefrom, discussed in the majority opinion. Since the funds here are accumulated by the levy of a revenue tax of general application, we are not called upon to determine questions involving proprietary or trust funds derived from other than the levy of a tax whose principal object is the raising of revenue. I would apply the two and one-half years limitation of Art. 5, § 55 to the disbursement of revenues collected from the tax levied by the gasoline excise tax and the sales tax.

I respectfully dissent.

I am authorized to state that Justice HODGES joins in the views expressed herein.