Dear Representative, Staggs
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Is it unconstitutional to designate a percentage of thegeneral revenue fund for teacher retirement with the allocationto be continuing each year?
¶ 1 A legislative act is valid unless it conflicts with the Constitution. "The authority of the Legislature, both the power to legislate and the limitation of that authority, is derived from the Oklahoma Constitution."State ex rel. Edmondson v. Okla.Corp. Comm'n, 971 P.2d 868, 872 (Okla. 1998). The authority of the Legislature extends to all rightful subjects of legislation, and any specific grant of authority does not restrict or exclude its authority upon the same or any other subject. Okla. Const. art. V, § 36. If there is any doubt as to the Legislature's power to act in any given situation, the doubt should be resolved in favor of the validity of the legislative act. Draper v. State,621 P.2d 1142, 1146 (Okla. 1980).
¶ 2 The Legislature has been granted authority in Article V, §62 of the Oklahoma Constitution to provide for a teachers' retirement system:
 The Legislature may enact laws to provide for the retirement for meritorious service of teachers and other employees in the public schools, colleges and universities in this State supported wholly or in part by public funds, and may provide for payments to be made and accumulated from public funds, either of the State or of the several school districts. Payments from public funds shall be made in conformity to equality and uniformity within the same classifications according to duration of service and remuneration received during such service.
Id.
¶ 3 The Legislature may do all except that which by the Constitution it is prohibited from doing. Therefore, in the absence of a specific constitutional prohibition, the Legislature could designate that a percentage of the general revenue of the State be allocated to the Teachers Retirement System.[1]
Also, you ask this office to determine whether such an allocation could be made to be continuing. Article V, § 55 of the Oklahoma Constitution provides:
 No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.
Id. (emphasis added).
¶ 4 In State ex rel. Murray v. Carter, 30 P.2d 700 (Okla. 1934), the Oklahoma Supreme Court held that Section 55 of ArticleV of the Oklahoma Constitution requires an appropriation bill to meet five requirements:
(a) Make an appropriation of money;
(b) provide for its payment within 30 months;
(c) specify the sum appropriated;
 (d) state the object to which said sum shall be applied; and
 (e) not require reference to any other law to fix the sum appropriated.
Carter, 30 P.2d 703 (quoting Miller v. Childers,238 P. 204, 207 (Okla. 1924)).
¶ 5 In Edwards v. Childers, 228 P. 472 (Okla. 1924), the Oklahoma Supreme Court discussed the requirements of Article V, § 55:
 A legislative act creating a special fund, all of which is, by the terms of the act, appropriated and directed to be expended for a special purpose and in an express manner, amounts to an appropriation of the entire fund so created, and where the amount accruing to and paid into said fund is capable of being definitely ascertained, it is sufficiently definite and certain to comply with the provisions of article 5, § 55, of the Constitution. Where a special fund is created from sources not coming from, or out of, the general revenue fund of the state, the authority
to the official board or commission to spend said fund for a special purpose may be granted where the authority to disburse said fund or obligate the state is limited to the amount of money that may go into said fund, and such officer is not permitted to incur an indebtedness against the state which may be payable out of, or charged against, the general revenue funds of the state.
Id. at 476 (emphasis added).
¶ 6 In Draper v. State Board of Equalization, 414 P.2d 276,279 (Okla. 1966), a special fund was defined to include only those funds supported by direct taxes, fees, or other revenue. In 1969 the Supreme Court again reviewed an appropriation of a special fund in light of Article V, § 55. State ex rel. Hawkinsv. Okla. Tax Comm'n, 462 P.2d 536 (Okla. 1969). The following quote appears at page 538 regarding the parameters of Article V, § 55:
 The inclusion of that part of Art. 5, Sec. 55, Constitution, supra, which provides that no money shall be paid out of the treasury of the State, unless made within two and one-half years after the passage of the appropriation act, was intended for some useful purpose. One useful purpose was to enable the Legislature to ascertain at each biennial session the amount of surplus revenues that would be available for appropriation during the next biennium. In order to do so it was necessary to establish a terminal date upon the effectiveness of prior appropriations. This was especially true as applied to general fund appropriations from which the three branches or departments of government are financed. Art. 5, Sec. 56, Constitution. In 81 C.J.S. States § 162, at page 1205, it is said:
 "General funds, available for general state purposes, which are deposited in the state treasury, are subject to constitutional requirements as to appropriations with respect to their disbursement,
and this is true regardless of the source from which such funds are derived." (Emphasis supplied.)
 However, as to special funds apportioned or earmarked for special purposes, it is said (pages 1205 and 1206):
 "While there is some authority holding that constitutional provisions as to appropriations apply to special funds, * * * it is generally held that constitutional provisions as to appropriations do not apply as to special funds devoted to special purposes."
Hawkins, 462 P.2d at 538.
¶ 7 Unlike Childers and Hawkins, which approved expenditures from a "special fund," you have asked whether the general fund can be automatically used for a specific purpose. There is no constitutional provision which authorizes an automatic or continuing appropriation from the general fund. In the absence of a special fund, the case law indicates an appropriation of general fund monies must be made each regular legislative session. In addition to Article V, § 55 of the Oklahoma Constitution other fundamental concepts of constitutional law preclude a continuing allocation of general fund monies.
¶ 8 In Boswell v. State, 74 P.2d 940 (Okla. 1937), the Oklahoma Supreme Court reviewed the proposed issuance of highway revenue anticipation notes to be paid by a portion of the motor vehicle registration and license tax which was diverted into a special fund and "irrevocably" pledged to the payment of the notes. The Court found the proposed transaction unconstitutional. The Court made the following statement regarding the authority of the legislature in regard to fiscal affairs:
 It is conceded that the control of the fiscal affairs of the state is a legislative function and that the power of the Legislature in the exercise of such control is plenary, subject only to constitutional restrictions, and the power of the people to legislate by means of the initiative and referendum.
This court is not concerned with the wisdom or expediency of the act. It is our sole function to determine whether or not the act contravenes the provisions of the Constitution.
Id. at 942 (emphasis added).
¶ 9 After defining debt, the Court made the following observation about the power of the Legislature and citizens:
 Section 1, article 5, of the Constitution vests the legislative authority of this state in the Legislature, but by virtue of the same section the people reserved to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also power at their own option to approve or reject at the polls any act of the Legislature. To sustain the validity of the act involved herein would be to hold that the Legislature is empowered to enact irrevocable and unrepealable legislation, thereby not only depriving a future legislative body of its right to repeal the law levying the tax pledged to the payment of the outstanding notes, but likewise denying the people of this state the right to repeal the levy of the tax or to provide for the distribution of the revenues arising therefrom to another or different purpose.
Id. at 947 (emphasis added).
¶ 10 The Legislature cannot pass irrepealable laws, and must comply with the mandates of Article V, § 55 of the Oklahoma Constitution which requires annual appropriations.
¶ 11 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The Legislature must comply with the provisions of Article V,§ 55 of the Oklahoma Constitution and appropriate annually anysums from the general fund to be allocated to the TeachersRetirement System.
 The Legislature could, however, provide for funding of thesystem through a continuing appropriation from a special fund.
W.A. DREW EDMONDSON Attorney General of Oklahoma
DOUGLAS F. PRICE Assistant Attorney General
[1] Currently, the system is funded through employer and employee contributions and dedication of 3.54% of sales, use, and income taxes. 68 O.S. Supp. 2000, §§ 1353[68-1353](3), 1403(3), 2352(1)(c).