**BLACK v. OKLAHOMA FUNDING BOND COMMISSION.**

No. 31517. Aug. 24, 1943.

*140 P. 2d 740.*

Walter L. Gray, of Oklahoma City, for Ernest W. Black.

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for defendants.

WELCH, J. This is an original action by a taxpayer attacking the constitutionality of House Bill 327, Title 62, page 139, S. L. 1943, entitled:

"An act providing for the orderly disposition and use of revenue accruing to the general revenue fund of 1942-1943 in excess of the total legislative appropriation made out of such general revenue fund; creating the state bond retirement fund; expressing legislative intent; providing for transferring of the surplus fund of the general revenue fund, as of June 30th, 1943, to the state bond retirement fund; providing for the purchase and retirement of state funding bonds in the sum of five million, nine hundred sixty-four thousand dollars ($5,964,000.00) and such additional amounts as offers are received by the Oklahoma Funding Bond Commission; prescribing procedure for purchase of said bonds by the Oklahoma Funding Bond Commission and method of cancellation of such bonds as purchased; creating the surplus account of the funding bond fund of 1935, the surplus account of the funding bond fund of 1939, and the surplus account of the funding bond fund of 1941; providing procedure for transferring of balance of state bond retirement fund to said surplus accounts of said funding bond funds; providing for the pledging of said amounts so transferred to the payment of state funding bonds; authorizing the investment in and purchase of United States Government Bonds with said surplus accounts; providing a method of testing the validity of this act by proceedings in Supreme Court; and declaring an emergency."

We quote the seven grounds of attack as follows:

"First: That House Bill No. 327 violates section 57, article 5, of the Oklahoma Constitution in that said act embraces more than one subject and that the subject of said bill is not clearly expressed in its title.

"Second: That said act by the Legislature violates section 19, article 10, of the Oklahoma Constitution, providing that no tax levied and collected for one purpose shall ever be diverted to another purpose, that the moneys which said act provides shall be transferred from the General Revenue Fund to the 'State Bond Retirement Fund' were not levied and collected for the purpose of retiring the state debt, but were levied and collected to pay current operating expenses of the state government.

"Third: That section 7 of said House Bill No. 327 violates section 23, art. 10 of the Oklahoma Constitution, as amended on March 11, 1941, in that said act and section purport to recognize as valid a deficit in the General Revenue Fund of the state for fiscal years beginning after June 30, 1944, whereas said amendment to section 23, article 10, of the Constitution prohibits any deficit from being incurred by the state, or any of its departments or agencies.

"Fourth: That said act violates the Oklahoma Constitution by attempting to delegate to the State Auditor, the State Treasurer and the Oklahoma Funding Bond Commission legislative powers, that is, the power to use the revenue therein referred to for the purpose of paying the state debt, the payment of which has already been provided for, and the power to invest said moneys and to apply the same toward paying or reducing the future state deficit.

"Fifth: That House Bill No. 327 is unconstitutional for the further reason that in said act, section 4 purports to make an appropriation and does not distinctly specify the sums appropriated and said attempted appropriation is not based upon any estimate of revenue fixed by the State Board of Equalization under section 23, article 10, of the Oklahoma Constitution as amended.

"Sixth: That said act violates section 55, article 5, of the Oklahoma Constitution, which requires all acts appropriating money to distinctly specify the sum appropriated and the object to which it is to be applied.

"Seventh: That said House Bill No. 327 is void for the reason that the same is ambiguous and unintelligible."

With reference to the first ground of attack: An examination of the legislative act in its entirety discloses that it relates only to the use and disposition of 1942-43 surplus general fund revenue and the various provisions of the act are germane, relative, and cognate to that subject, which is clearly expressed in

the above quoted title. This ground of attack is denied under the rule announced in the following decisions: Rumsey v. Diamond, 127 Okla. 72, 259 P. 849; C. C. Julian Oil & Royalties Co. v. Capshaw, 145 Okla. 237, 292 P. 841; Atwater v. Hassett, 27 Okla. 292, 111 P. 802, and State v. Bonner, 86 Okla. 280, 208 P. 825; State ex rel. Read, Ins. Com., v. Midwest Mutual Burial Association, 176 Okla. 468, 56 P. 2d 124, and Harmon v. Oklahoma Tax Commission, 189 Okla. 475, 118 P. 2d 205.

Does the act violate section 19, art. 10, of the Oklahoma Constitution? That section provides:

"Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose."

It is contended that these funds were collected from taxes levied for general fund purposes and for the purpose of paying current operating expenses and that the use of same for the payment of prior existing indebtedness would be a devotion of the fund for purposes other than that for which same was levied, contrary to such provision of the Constitution. We find no decision of this court in point.

We think such constitutional provision was designed to prevent the concealment of the purpose of a tax levy and to prohibit the improper use of a fund after it has already been pledged for the payment of a certain obligation. Such surplus of revenue from tax levies is not the result of deliberation. It has accrued only incidentally. The actual purposes and obligations for which the taxes were levied—1942-43 current expenses—have already been met, fully paid, and therefore no longer exist. The purpose of the constitutional provision now considered has been fully served.

Thus we find the state possessed incidentally of a fund which has not been previously pledged for any purpose. Such funds are subject to the disposal of the Legislature for any lawful state purpose in accordance with the legislative will. We think there can be no doubt that its application toward retirement of the state debt or its investment until needed for such purpose is not an unlawful application of same.

There would seem to be merit in plaintiff's contention if we were justified in saying that this fund was a result of tax levies to pay current expenses for 1942-43 and subsequent years, but such is not this case. State general fund tax levies are made to pay current expenses of a specified period and are not made for the deliberate purpose of creating a surplus to pay such expense subsequent to that period.

The case most nearly in point in our conclusion here is Protest of St. Louis-S. F. Ry. Co., 166 Okla. 50, 26 P. 2d 212, in which it was held that a surplus above all possible needs in the sinking fund of a school district may be transferred by the governing board of the school district for use in the general fund.

See, also, State ex rel. Jackson, Atty. Gen., v. Board of Com'rs of Butler County et al., 77 Kan. 527, 94 P. 1004; State v. Hopton, 66 N. D. 313, 265 N. W. 395; and Whaley v. Commonwealth, 110 Ky. 154, 61 S. W. 35.

Generally, the cases relating to surplus in the funds of the municipal subdivisions of the state are not applicable here because in most such instances the disposition of such surplus is usually governed by specific statute.

We find no violation of section 19, art. 10, of the Constitution herein.

The only argument presented by plaintiff under the third ground of attack appears in plaintiff's own language as follows:

"The settled purpose of the law has been to place restrictions and limitations upon the taxing power by the restriction of the outlay of the money after it has been collected from the people.

Authority must be shown for every levy of taxes, not only in the state at large but also in the political subdivision thereof. In this state authority is derived from the people and particularly when there had been a constitutional amendment which states that no deficit may be incurred, then it is inconsistent that the Legislature should provide for the payment of a deficit."

We assume the argument is directed toward subdivision (e) of section 7 of the act. The same provides as follows:

"If at the end of any fiscal year which begins after June 30, 1943, it appears and there is on June 29 a deficit in the General Revenue Fund for any such year the State Auditor is hereby authorized and directed to use any moneys in the State Funding Bond Fund Surplus Accounts of 1935, of 1939, and of 1941, to retire and pay any of the aforesaid State Bonds and Coupons (or interest) which mature in such year and would be payable that fiscal year out of the State Funding Bond Fund of 1935, of 1939, and of 1941. In such event on June 30 in any fiscal year, after having fully provided for full payment of all bond and coupon (or interest) maturities of such fiscal year, any moneys in the State Funding Bond Funds of 1935, of 1939 and of 1941 which has been retained and set aside from General Revenue income for such annual retirements of that year shall not longer be retained and set aside but shall be allocated to the ordinary appropriations which had been made out of the General Revenue in an amount (if such amount is available) only sufficient to prevent a deficit in such General Revenue Fund at the close of business on June 30. A 'deficit' as used herein is hereby defined to mean in the case of any fiscal year beginning after June 30, 1944, a failure of General Revenue Fund income (estimated as provided in Article 10, Section 23 of the Constitution) to pay the General Revenue Fund appropriations (made within the limits prescribed by Article 10, Section 23 of the Constitution) excluding any unexpended appropriations."

Obviously such provision could not create a current deficit in any year, nor can it be said that it authorizes payment of a current deficit contrary to the provisions of section 23, art. 10, of the Constitution as amended. Such section as amended in 1941 provides:

"The state shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the state, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as provided in this amendment and in sections twenty-four (24) and twenty-five (25) of article ten (X) of the Constitution of the State of Oklahoma. Provided, that the Legislature may fund or refund the state debt arising prior to July 1, 1941."

A comprehensive examination of the 1943 act clearly shows a primary legislative intent to devote this particular surplus of revenue to the purchase or attempted purchase of certain state obligations before due date and for the payment of certain of such obligations as they become due. Such part of the funds as are not so employed, and which may not be necessary for that purpose, are specifically devoted toward financing future current fund appropriations which would otherwise remain unfinanced in the event of the contingency therein mentioned. We know of no constitutional inhibition against the use of such surplus in such manner.

Legislative appropriations are financed by income estimated to accrue in the future within a given period of time. The Constitution contemplates that such estimates shall be made in good conscience so that the appropriations may be adequately financed, but it would be no unusual thing that such income would fall short of the estimate. In such case it would seem that under the last above quoted constitutional provision no debt or obligation in excess of constitutional limits could thereby accrue. Nor does the act under consideration purport to recognize same as a debt. It simply provides for the use in such eventuality of any surplus of these funds then remaining toward financing the appropriations theretofore made. There is no contention here that any part of these funds could not be employed toward financing future current expense appropriations. The act conforms to the

letter and spirit of the constitutional provisions mentioned under plaintiff's third ground of attack.

Under the fourth ground of attack it is asserted that the act purports to delegate legislative authority. We conceive the correct rule to have been previously stated in Gibson Products Co. v. Murphy, 186 Okla. 714, 100 P. 2d 453, as follows:

"The Legislature may not delegate its power to make laws, it must declare the policy and fix legal principles, but other agencies may be invested with power to ascertain facts to which the policy and principles apply, otherwise 'there would be infinite confusion in the laws . . .'" Cooley, Constitutional Limitations 228 (8th Ed.)

"There is a true distinction between delegation of legislative power, or the function of lawmaking, and the conferring of authority or discretion as to execution of law. . . ."

An examination of the act discloses that it does nothing more than to direct the application of these funds to certain detailed and specified lawful purposes. It confers nothing more than administrative authority upon certain officials and a board to carry out the clearly expressed legislative purpose and intent. See Fitzpatrick v. State Board of Examiners of Montana et al., 105 Mont. 234, 70 P. 285.

Of the fifth ground of attack we observe that the act became law before the end of the fiscal year 1942-43 and therefore the amount of surplus which would accrue in the fund could not be stated in a definite amount when same was passed. As to the suggestion that the act does not distinctly specify the sums appropriated, we observe that the act devotes the entire surplus, whatever it may be when capable of ascertainment, to the purposes therein specified. The case of Edwards v. Childers, 102 Okla. 158, 228 P. 472, is controlling in that regard. Therein we held in paragraph 3 of the syllabus as follows:

"A legislative act creating a special fund, all of which is, by the terms of the act, appropriated and directed to be expended for a special purpose and in an express manner, amounts to an appropriation of the entire fund so created, and where the amount accruing to and paid into said fund is capable of being definitely ascertained, it is sufficiently definite and certain to comply with the provisions of article 5, sec. 55, of the Constitution."

In this act the Legislature created a special fund of this surplus which was capable of specific ascertainment by ordinary bookkeeping methods and calculations at a time previous to the time when the law should be first administered. Nor does the act violate the provisions of section 23, art. 10, of the Constitution as amended in 1941 to provide that appropriations shall be based upon estimate of revenue. We find no violation of the constitutional provisions invoked in that ground of attack.

The sixth attack relates to section 55, art. 5, of the Constitution. That section provides:

"No money shall ever be paid out of the treasury of this state, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

We think the act complies with that section in that it is an appropriation by law, sufficiently specifies the amount appropriated as above discussed, and the objects to which it is to be applied.

Whether any part of such funds may be paid out under this act after the lapse of two and one-half years is not properly before us in this case, as no such contingency has arisen.

We find no merit in the contention under attack number seven to the effect that the act is ambiguous.

Plaintiff's attacks as above outlined are in all respects denied.

6

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, DAVISON, and ARNOLD, JJ., concur. HURST, J., absent.