David **WALTERS**, Governor of the State of Oklahoma and Ken Feagins, a non-resident individual, Appellants,

v.

**STATE** of Oklahoma ex rel., OKLA-HOMA TAX COMMISSION, Appellee.

No. 85148.

Court of Appeals of Oklahoma, Division No. 1.

Aug. 23, 1996.

Rehearing Denied Nov. 4, 1996.

Certiorari Denied March 5, 1997.

Stanley M. Ward, Norman, Ken Feagins, Dallas, Texas; Duchess Bartmess, Oklahoma City, for Appellants.

Stanley Johnston, Robert B. Struble, Oklahoma City, for Appellee.

## MEMORANDUM OPINION

CARL B. JONES, Presiding Judge:

Appellants brought this declaratory judgment action against the Oklahoma Tax Commission [the Commission] challenging the constitutionality of Senate Bill No. 1121 [S.B. 1121], which was enacted by the Oklahoma Legislature in 1994. On cross-motions for summary judgment, the trial court rendered judgment for Appellee, and Appellants appeal.

S.B. 1121, among other things, changed the method of calculating state income tax for nonresident and part-year resident individuals. Okla.Sess.Laws 1994, ch. 278, § 27; *see now* 68 O.S.Supp.1994 § 2362.[1] Prior to amendment, § 2362 provided that the taxable income of a nonresident individual, trust, or estate, "shall be the same as if he were a

---

1. S.B. 1121 amended 68 O.S. § 2362 to read in pertinent part:

"For tax years beginning on or after January 1, 1994, the Oklahoma taxable income of a part-year resident individual, nonresident individual, a nonresident trust and a nonresident estate shall be calculated ... as if all income were earned in Oklahoma.

"Using Oklahoma income tax rates, part-year resident individuals, nonresident individuals, nonresident trusts and nonresident estates shall compute their tax liability on the amount computed in the preceding paragraph.

"From the liability computed there shall be deducted all allowable credits to determine the amount of tax due.

"Part-year resident individuals, nonresident individuals, nonresident trusts and nonresident estates shall divide adjusted gross income from Oklahoma sources by the adjusted gross income from all sources to arrive at the applicable percentage that Oklahoma adjusted gross income represents of all adjusted income received by the taxpayer in the income year.

"Part-year resident individuals, nonresident individuals, nonresident trusts and nonresident estates shall multiply the amount of Oklahoma tax computed by the applicable percentage calculated in the preceding paragraph in order to determine the amount of income tax which must be paid to the State of Oklahoma. Nothing in this section shall be construed to allow for greater than one hundred percent (100%) of a taxpayer's income to be taxed.

"* * *"

resident individual [etc.]," and established a system by which the taxpayer's adjusted gross income as reported to the federal government was excludable from state taxable income *unless* the income was attributable to ownership of property, conduct of a business, trade, or profession, or other business or property in this state. Income from sources outside Oklahoma was not included in a nonresident's taxable income. S.B. 1121 modified existing law by requiring nonresident and part-time residents to apply the Oklahoma tax rate applicable to their adjusted gross income from all sources (not just income earned in Oklahoma) and calculate their tax liability as if paying Oklahoma income tax on all such taxable income, prorated according to the percentage the Oklahoma taxable income bears to the adjusted gross income from all sources.

The Commission describes the amendment as one which created "tax equity," assuring that nonresidents and part-year residents pay tax on their Oklahoma income based on the rate determined by their total taxable income, just as full-time Oklahoma residents do. Appellants contend that S.B. 1121 was a "revenue bill," and so is unconstitutional because it was enacted contrary to the requirements of Okla. Const., Art. V, § 33.[2] Appellants also contend the bill is invalid under the state Constitution because it embraces more than one subject. Okla. Const., Art. V, § 57. In addition, Appellants raise equal protection, due process, and Commerce Clause objections to the bill under the state and federal constitutions.

This appeal is brought under the accelerated procedures of Rule 1.203(A), Rules of Appellate Procedure in Civil Cases, 12 O.S. 1993 Supp. Ch. 15, App. 2. Summary judgment will be affirmed if the record reveals no substantial controversy as to any material fact, and that one party is entitled to judgment as a matter of law. *See Johnson v. Mid–South Sports,* 806 P.2d 1107, 1108 (Okla.1991). Our review is limited to the record and issues actually presented to the trial court. *Hughey v. Grand River Dam Auth.,* 897 P.2d 1138, 1143 (Okla.1995).

In our review of the trial court judgment we must be guided also by the strong presumption that legislative enactments are constitutional. *Black v. Ball Janitorial Service, Inc.,* 730 P.2d 510, 512 (Okla.1986); *Reherman v. Oklahoma Water Resources Bd.,* 679 P.2d 1296, 1300 (Okla.1984). A legislative act will be upheld against constitutional challenge unless it is clearly, palpably, and plainly inconsistent with our fundamental law. *Reherman,* 679 P.2d at 1300. Any question of constitutionality, even in a close case, will be resolved in favor of validity of the legislation. *Leveridge v. Oklahoma Tax Comm'n,* 294 P.2d 809, 811 (Okla.1956).

■ At the outset, we reject the Commission's argument that Appellant Walters lacks standing to press a request for declaratory relief in this case. We concede that Walters, as a full-time Oklahoma resident, has no direct interest in the effects of S.B. 1121 on nonresidents and part-year residents. We find, however, that Walters (whose veto of the bill was overridden) has standing to question whether the bill passes constitutional

---

2. Section 33, as amended by State Question No. 640 in 1992, provides,

"A. All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills.

"B. No revenue bill shall be passed during the last five days of the session.

"C. Any revenue bill originating in the House of Representatives shall not become effective until it has been referred to the people of the state at the next general election held throughout the state and shall become effective and be in force when it has been approved by a majority of the votes cast on the measure at such election and not otherwise, except as otherwise provided in subsection D of this section.

"D. Any revenue bill originating in the House of Representatives may become law without being submitted to a vote of the people of the state if such bill receives the approval of three-fourths (¾) of the membership of the House of Representatives and three-fourths (¾) of the membership of the Senate and is submitted to the Governor for appropriate action. Any such revenue bill shall not be subject to the emergency measure provision authorized in [Art. V, § 58] and shall not become effective and be in force until ninety days after it has been approved by the Legislature, and acted on by the Governor."

muster under the one-subject rule in Art. V, § 57. The affidavit of the Governor states that the interests of the state are involved in that the bill is harmful to the interest of the state in attracting new out-of-state business. In this summary judgment proceeding that statement suffices to supply standing in that under the statute, the state's interest is squarely brought before the court. Feagins has standing to press the claim for relief in all respects, and we will not burden this opinion with an extended discussion of the nuances of standing.

■ The accepted test for a "revenue bill" is the two-pronged analysis stated by the court in *Leveridge:* A revenue bill is one whose principal purpose is to increase state tax revenue *and* which levies a tax in the strict sense. *Leveridge,* 294 P.2d at 811; *see Board of County Comm'rs v. Oklahoma Pub. Empl. Retirement Sys.,* 405 P.2d 68, 72–73 (Okla.1965).[3] The term "has been confined to bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes, which may incidentally create revenue." *The Nashville,* 17 Fed.Cas. 1176, 1178 (No. 10,023) (D.Ind. 1868), quoted in *Anderson v. Ritterbusch,* 22 Okla. 761, 98 P. 1002, 1006 (1908).

Appellants argue that S.B. 1121 satisfies both prongs of the revenue bill test. The Commission estimated that § 27 of the bill would raise approximately $18 million dollars in revenue, the bulk of which would go into the general revenue fund. For the most part, however, the sections of S.B. 1121 were predicted to be revenue-neutral. In fact, the Commission's impact statements showed that two sections of the bill would have a *negative* impact on revenue. Moreover, § 27 would not uniformly increase state taxes for all nonresidents and part-year residents. If a taxpayer had losses from out-of-state business (which would reduce federal adjusted gross income), the Commission projected

that § 27 would actually result in a decrease in state tax.

It appears, then, that the Commission is correct to characterize S.B. 1121 as merely a change in the way the tax laws are administered. The bill's principal object is not to raise revenue, and it does not levy a tax in the strict sense. That it has the incidental effect of increasing general revenues does not mean make it a revenue bill. The trial court correctly rejected the challenge to S.B. 1121 under Art. V, § 33.

■ Appellants argue S.B. 1121 is void under Art. V, § 57[4] because it relates, according to its title, to several different subjects: "revenue and taxation, debtor and creditor, intoxicating liquors, motor vehicles and soldiers and sailors." Appellants assert there is no overarching purpose or theme to the divers provisions in the bill. The Commission asserts the common theme of the bill's provisions is administration of the state tax laws.

■ The purpose of § 57 is to prevent legislative "log-rolling—the enactment of legislation through the combination of unpopular causes with popular legislation on an entirely different subject," *Campbell v. White,* 856 P.2d 255, 258 (Okla.1993); *Bond v. Phelps,* 200 Okla. 70, 191 P.2d 938, 950 (1948); and "veto-proofing" a bill by attachment of a popular rider to an otherwise unpopular bill. *See Johnson v. Walters,* 819 P.2d 694, 697 (Okla.1991). If the bill's provisions are "germane, relative and cognate" to the subject expressed in the title, then the bill satisfies the mandate of § 57. *See Black v. Oklahoma Funding Bond Comm'n,* 193 Okla. 1, 140 P.2d 740, 743 (1943); *Campbell,* 856 P.2d at 260.

The proper construction to be given to the one-subject rule seems to have narrowed somewhat in recent years. *See Campbell,* 856 P.2d at 258–60; and *Johnson,* at 699

---

**3.** *See, generally,* Ramsey, *What is a "Revenue Bill" Within the Meaning of Our Most Recent Constitutional Amendment,* 63 Okla.B.J. 1567 (1992), discussing the subject following passage of State Question No. 640.

**4.** "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in

its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes ... Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

(Wilson, J., concurring) (suggesting that strict compliance with § 57 would be required thereafter). In this case, we agree with the trial court that "[e]very provision of the Act in some way deals with enforcement of the tax laws of Oklahoma or provides for a method of reporting or for provisions to be placed on tax forms as the method for donating funds to the State." Appellants have failed to point out any section of the bill which does not relate to the general subject of tax administration: tax liens; filing of a bond with the Commission by persons in liquor business; inspection and registration of vehicles by the Commission or its motor license agents; confidentiality of tax information; approval of bond in lieu of payment of disputed taxes; tax refund claims; estate tax returns and audits; tax exemptions; tax code changes; and the like all relate to the state tax laws and their administration. We hold that S.B. 1121 does not violate the one-subject rule of Art. V, § 57.

■ Appellants' various other constitutional challenges to S.B. 1121 are based on their contention that § 27 of the bill imposes an indirect tax on income derived outside of the state. The Commission properly responds that § 27 does not impose a tax on such out-of-state income, but merely uses that income in calculating the rate at which Oklahoma-derived income shall be taxed. With that understanding of § 27 in mind, some of Appellants' constitutional arguments are clearly without merit. Appellants claim a due process violation under Okla. Const., Art. II, §§ 2 and 7, and the Fourteenth Amendment to the U.S. Constitution, but they have failed to establish the necessary factual predicate to assert such a claim, because their out-of-state income is not being taxed. The bill does not offend the privileges and immunities clause of the U.S. Constitution, Art. IV, § 2, cl. 1, by taxing the property of persons who are not represented in the Legislature. Quite simply, § 27 of S.B. 1121 is not an impermissible attempt to extend the jurisdiction of Oklahoma's taxing authority beyond its borders. Use of out-of-state income to calculate a tax rate for in-state income in no way represents a tax on the out-of-state income. *See Brady v. State,* 80 N.Y.2d 596, 592 N.Y.S.2d 955, 958, 607 N.E.2d 1060, 1063

(Ct.App.1992), *cert. denied,* 509 U.S. 905, 113 S.Ct. 2998, 125 L.Ed.2d 692 (1993); *cf., Maxwell v. Bugbee,* 250 U.S. 525, 539, 40 S.Ct. 2, 6, 63 L.Ed. 1124 (1919) (inclusion of entire estate of decedent to calculate inheritance tax rate for property in New Jersey "is in no just sense a tax upon the foreign property.").

■ Similarly, Appellants' claim that nonresidents and part-year residents are denied equal protection of the laws, in violation of those same constitutional provisions, lacks a factual basis because Appellants' have failed to show how they are members of a class which has been treated differently. Appellants are treated no differently than other nonresidents or part-year residents, and the method for determining tax rates based on a taxpayer's total income is not different for nonresidents or part-year residents from the method used for full-time Oklahoma residents.

■ Appellants' final constitutional attack on S.B. 1121 asserts that it unfairly erects a barrier to interstate commerce in violation of the Commerce Clause of the U.S. Constitution, Art. I, § 8, cl. 3. Appellants claim the bill places an arbitrary and discriminatory tax burden on foreign income of nonresidents and part-year residents. As we have just observed, however, the bill does not tax foreign income. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), cited by Appellants, is inapposite to the situation presented here. In *Complete Auto Transit,* a motor carrier transporting cars in Mississippi for General Motors brought a Commerce Clause challenge to a "privilege tax" levied by the State of Mississippi. (The Court rejected its challenge.) S.B. 1121 does not purport to tax interstate commerce.

Having reviewed the record and the briefs of the parties, this Court finds that the trial court judgment must be AFFIRMED.

GARRETT and JOPLIN, JJ., concur.