Dear Representative Bonny,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Do the provisions of Sections 6, 7, 8, and 9 of EnrolledSenate Bill 1048 of the Second Session of the 47th OklahomaLegislature (codified at 68 O.S. Supp. 2000, §§2385.25-2395.28), which provide for the withholding ofincome tax from the mineral interest proceeds of nonresidentroyalty owners, violate the Equal Protection Clause of the UnitedState Constitution or any other provision of the United StatesConstitution or Oklahoma Constitution?
¶ 1 The referenced sections of Senate Bill 1048 provide for the withholding of State income tax from the mineral interest proceeds of nonresident royalty owners. In your letter, you question the constitutionality of the law in that these sections "only affect (1) out of state residents as compared to instate residents, (2) individuals as compared to corporations or other legal entities, and (3) royalty interest owners as compared to other oil and gas interests." Letter from Jack Bonny, Oklahoma State Representative, to W.A. Drew Edmondson, Oklahoma Attorney General (Oct. 10, 2000) (on file with the Attorney General's office). Because the statute treats nonresidents differently from residents in the withholding of income tax from royalty payments, your question implicates the Privileges and Immunities Clause of the United States Constitution, as well as the Equal Protection Clause. See U.S. Const. art. IV, § 2, cl.1. ("The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States") and U.S. Const. amend. XIV, § 1
("nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws"). The constitutional issues will be addressed after a review of the applicable provisions of Senate Bill 1048 and related income tax laws.
 Senate Bill 1048
¶ 2 Senate Bill 1048 includes amendments to existing laws relating to oil and gas, as well as new sections of law providing for the withholding of income tax from mineral interest proceeds.See 2000 Okla. Sess. Laws ch. 315. Sections 6, 7, 8, and 9 of Senate Bill 1048 are codified in the Oklahoma Income Tax Code with the other withholding provisions. See 68 O.S. 1991 andSupp. 2000, §§ 2352-2385.28. Under the new law, each remitter ("any person who distributes revenue to royalty interest owners") must deduct and withhold from each payment being made to any royalty interest owner an amount equal to six and three-fourths percent of the gross amount payable to the owner for oil and gas produced in this State. Id. § 2385.25(2); see id. § 2385.26(A). For the purpose of the withholding statute, "royalty interest owner" is defined as an individual who owns a non-working interest in oil or gas production. See id. § 2385.25(3). Royalty interest owners from whom taxes are withheld and who file an Oklahoma income tax return are entitled to a credit against the tax as shown on the return in the amount withheld by the remitter. See id. § 2385.26(C). If the amount withheld is greater than the tax due, the person filing the return is entitled to a refund in the amount of the overpayment.See id. Remitters are required to pay the amounts withheld from the royalty owners to the Oklahoma Tax Commission on a quarterly basis for deposit in the Income Tax Withholding Fund. See id. § 2385.27(A), (E).
¶ 3 The obligation to deduct and withhold does not apply to those payments made to: "1. Current or permanent residents of Oklahoma; 2. The United States, this state or any state or federal agency or political subdivision; 3. Any charitable institution; or 4. Any federally recognized Indian tribe." 68O.S. Supp. 2000, § 2385.26[68-2385.26](B). State and federal governments, charitable institutions, and Indian tribes are not subject to State income tax. See id. §§ 2353(12), 2355; 68 O.S. 1991, §2359[68-2359]. "Current or permanent residents" are subject to the tax on income, including royalty payments; however, under the withholding exemption, the tax is not withheld from their royalty payments by the remitter, but rather is due at the time the yearly return is filed or on a quarterly basis. See 68 O.S.Supp. 2000, §§ 2358[68-2358](A)(4)(a), 2368, 2375, 2385.7, 2385.9.
¶ 4 All royalty proceeds from Oklahoma properties are subject to Oklahoma income tax, irrespective of the residency of the mineral owner. Income tax is imposed upon the "Oklahoma taxable income" of every resident or nonresident individual. See 68O.S. Supp. 2000, § 2355[68-2355](A). "Oklahoma taxable income" means taxable income reportable to the federal government under the Internal Revenue Code, adjusted as provided in the Oklahoma Income Tax Code. See id. § 2353(12). Income from oil and gas properties is allocated to the situs of such property. See id.
§ 2358(A)(4)(a). Nonresidents must report income attributable to the ownership of any interest in real or personal property in Oklahoma. See id. § 2362. Oklahoma's imposition of income tax on the income of nonresidents from oil and gas produced from Oklahoma properties was upheld in Shaffer v. Carter,252 U.S. 37 (1920). The Court noted that it had always recognized the rights of the States to exercise the widest liberty with respect to the imposition of taxes (see id. at 51) and that just as a State may impose general income taxes upon its own citizens, it may levy a duty of like character, and not more onerous in its effect, upon incomes accruing to nonresidents from their property or business within the State. See id. at 52.
¶ 5 Before beginning the constitutional analysis of Senate Bill 1048, it should be noted that all acts of the legislature are presumed constitutional and will be upheld against a constitutional challenge unless they are clearly inconsistent with the Constitution. See Walters v. State ex rel. Oklahoma TaxComm'n, 935 P.2d 398, 402 (Okla.Ct.App. 1996) (bill changing method of calculating state income tax for nonresidents did not violate equal protection guarantee). The presumption of constitutionality "must be overcome beyond all doubt by the person asserting the unconstitutionality of the Act." Leveridgev. Oklahoma Tax Comm'n, 294 P.2d 809, 811 (Okla. 1956) (citation omitted).
 The Equal Protection Clause
¶ 6 The Equal Protection Clause of the Fourteenth Amendment prohibits States from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 2. The due process protection that is encompassed within Okla. Const. art. II, § 7 ("No person shall be deprived of life, liberty, or property, without due process of law") is coextensive with the Fourteenth Amendment. Id. See OklahomaAss'n for Equitable Taxation v. City of Oklahoma City,901 P.2d 800, 805-06 (Okla. 1995) (holding that an ordinance allowing residents over 65 to claim a specified refund of sales tax does not violate the Equal Protection Clause).
 "It is well settled that where taxation is concerned, and no specific federal right, apart from equal protection is involved, states have great leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." Bison Nitrogen Prod. Co. v. Lucas, 738 P.2d 147, 151 (Okla. 1987). "Unless a classification jeopardizes the exercise of a fundamental right or it makes a classification on an inherently suspect characteristic, a classification which rationally furthers a legitimate state interest will withstand an equal protection challenge." Oklahoma Ass'n, 901 P.2d at 806. A statutory classification "will not be set aside if any state of facts reasonably may be conceived to justify it." Id.
¶ 7 In this case the difference in treatment is not in the imposition of tax, but rather in the means of collecting the tax. You have identified three distinctions in your letter where the statute affects one class but not another: (1) individuals versus corporations or other legal entities; (2) working interest owners versus non-working interest owners, and (3) residents versus nonresidents. As residency implicates a federal right apart from equal protection, that is, the Privileges and Immunities Clause, only the first two categories are subject to the standard equal protection analysis. See Austin v. New Hampshire,420 U.S. 656, 663 (1975) (Privileges and Immunities Clause requires a closer scrutiny when nonresidents are treated differently from residents for tax purposes). Distinctions drawn on the basis of categories such as individuals as opposed to corporations or royalty interests as opposed to working interests easily fall within the discretion of the Legislature and do not violate the equal protection clause. Individuals and corporations are not taxed exactly the same although both are subject to income tax. There are also distinctions between working interests which bear the costs of production and royalty interests which do not share in the costs of production that make the legislative distinction reasonable. These classifications do not jeopardize the exercise of a fundamental right or represent classifications based on an inherently suspect characteristic. "Classifications not manifestly arbitrary or unreasonable are not constitutionally infirm." Suglove v. Oklahoma Tax Comm'n, 605 P.2d 1315, 1320
(Okla. 1979). Corporations and working interest owners are still liable for the tax on their mineral interest proceeds; they simply are not subject to the withholding requirements utilized as a means of collecting the tax.
¶ 8 Most cases in the equal protection area address differences in treatment in the imposition of taxes, rather than in the collection of taxes. In a case on point to the issue raised here, the Michigan Supreme Court held that the equal protection rights of a nonresident taxpayer who was a former State employee were not violated by the State's practice of withholding income taxes from his deferred compensation plan distributions, but not requiring private employers to withhold taxes with respect to nonresidents receiving distributions from private employer deferred compensation plans, since the State income tax applied equally to all former residents who received deferred compensation; withholding was simply one method of collecting income taxes and failure to withhold taxes did not negate the underlying tax liability. See Molter v. Department of Treasury,505 N.W. 2d 244, 253 (Mich. 1993). In that case the difference in withholding treatment was between employees of a public employer versus employees of a private employer, rather than between residents and nonresidents. As it implicates a classification granted special constitutional recognition, the residency distinction requires analysis under the Privileges and Immunities Clause.
 The Privileges and Immunities Clause
¶ 9 The Privileges and Immunities Clause provides, "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2. One of the rights intended to be secured by this provision is that a citizen of one State may carry on business in another State without being subjected to taxes more onerous than the latter State's own citizens. See Shaffer, 252 U.S. at 56. In an equal protection analysis, a statute will withstand a constitutional attack if any set of facts can reasonably be conceived to justify the disparate treatment. See OklahomaAss'n, 901 P.2d at 806. However, the Privileges and Immunities Clause requires a closer scrutiny when nonresidents are treated differently from residents for tax purposes. See Austin,420 U.S. at 663 (noting that case law reflects "an appropriately heightened concern for the integrity of the Privileges and Immunities Clause by erecting a standard of review substantially more rigorous than that applied to state tax distinctions among, say forms of business organizations or different trades and professions").
¶ 10 In the statutes under review, nonresidents are not taxed more heavily than residents; the difference in treatment is only in the means of collecting the tax. The income tax is withheld from nonresidents' royalty payments, whereas residents pay the tax at the time the return is filed, either yearly or quarterly. A difference in withholding requirements between residents and nonresidents was upheld against a Privileges and Immunities Clause challenge by the Supreme Court in Travis v. Yale TowneMfg. Co., 252 U.S. 60 (1920). In Travis the issue was whether New York law violated the Privileges and Immunities Clause by discriminating against nonresidents by requiring employers to withhold the tax from nonresidents' salaries, but not residents' salaries. The Court noted that the law did not increase the burden of tax upon nonresidents, but merely recognized the fact that as to them the State imposed no personal liability, and hence adopted a convenient substitute for it. Seeid. at 76. The adoption of a withholding requirement for nonresident royalty owners may be justified by the fact that collection of the tax from nonresidents is more difficult than collecting the tax from residents. Withholding the tax from nonresidents' mineral interest proceeds is a rational means of addressing this problem.
¶ 11 Tax laws have been struck down under the Privileges and Immunities Clause where taxes are imposed upon nonresidents under circumstances where residents do not pay a similar tax or when nonresidents are not granted similar deductions to residents without adequate justification. See Austin, 420 U.S. at 663,665 (holding that the New Hampshire Commuters Income Tax is unconstitutional because the tax falls exclusively on nonresidents' incomes and is not offset even approximately by other taxes imposed upon residents alone); Lunding v. New YorkTax Appeals Tribunal, 522 U.S. 287 (1998) (holding that a New York law that denied only nonresident taxpayers a state income tax deduction for alimony was unconstitutional because New York did not adequately justify the discriminatory treatment). InLunding the Court held that when confronted with a challenge under the Privileges and Immunities Clause to a law distinguishing between residents and nonresidents, a State may defend its position by demonstrating "(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." Id. at 298 (citation omitted).
¶ 12 The Court in Lunding noted that as a practical matter, the Privileges and Immunities Clause affords no assurance of precise equality in taxation between residents and nonresidents of a State and that some differences may be inherent in any taxing scheme. See id. at 297. The Court observed that the "Privileges and Immunities Clause bars discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it." Id. at 298 (citation omitted).
¶ 13 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Sections 6, 7, 8, and 9 of enrolled Senate Bill 1048 of theSecond Session of the 47th Legislature (codified at 68 O.S.Supp. 2000, §§ 2385.25-2385.28), which provide for thewithholding of income tax from the mineral interest proceeds ofnonresident royalty owners, do not violate either the EqualProtection Clause or the Privileges and Immunities Clause of theUnited States Constitution. A statutory classification will notbe set aside under the Equal Protection Clause of theFourteenth Amendment if any state of facts reasonably may be conceived tojustify it. The disparate treatment of nonresident royalty ownersin the withholding of tax from royalty payments does not impose agreater tax burden on nonresidents, but rather merely imposes adifferent method of collecting the tax. Therefore, thewithholding statutes do not violate the Privileges and ImmunitiesClause of the United States Constitution.
W.A. DREW EDMONDSON Attorney General of Oklahoma
KATHRYN BASS Assistant Attorney General