OSCN Found Document:Question Submitted by: The Honorable Mike Shelton, Assistant Democratic Floor Leader, State Representative, District 97

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 Question Submitted by: The Honorable Mike Shelton, Assistant Democratic Floor Leader, State Representative, District 97
2014 OK AG 17
Decided: 11/18/2014
Oklahoma Attorney General Opinions
Cite as: 2014 OK AG 17, __ __

 

¶0 This office has received your request for an Attorney General Opinion in 
which you ask, in effect, the following question:
Under Section 162 of 
Senate Bill 2127, the Oklahoma Legislature transferred some $5 million from the 
Trauma Care Assistance Revolving Fund to be appropriated for other uses. Does 
that transfer violate Article X, Section 19 of the Oklahoma Constitution, which 
provides that a tax raised for one purpose shall never be devoted to another 
purpose? 
I.
The Trauma Care Assistance Revolving Fund
¶1 The Oklahoma Legislature created the Trauma Care Assistance Revolving Fund 
("Fund") in 1999. See 1999 Okla. Sess. Laws ch. 278, § 1. This first 
iteration of the Fund primarily served to reimburse uncompensated trauma 
facilities like hospitals as well as ambulance services with a small set aside 
for the State Department of Health to achieve other goals under the Act. 
Id.
¶2 The Legislature altered the Fund's scope in 2004 when it passed the 
Oklahoma Trauma Systems Improvement and Development Act. See 2004 Okla. 
Sess. Laws ch. 459. In that Act, the Legislature provided several mechanisms for 
improving trauma care in Oklahoma, including an expansion of the lawful 
expenditures of the Fund to include the reimbursement of doctors for 
uncompensated treatment. See id. § 10. Although some of the Act's 
provisions have since been repealed, see 2013 Okla. Sess. Laws ch. 229, § 
99, the Fund continues to operate and reimburse various trauma-related expenses 
according to the terms of its authorizing statute, which states that the Fund 
"shall be a continuing fund, not subject to fiscal year limitations" and that 
"[a]ll monies accruing to the credit of the fund are hereby appropriated and may 
be budgeted and expended by the Department . . . ." 63 
O.S.Supp.2013, § 1-2530.9(A). The Legislature made several notable findings in the 
Act:


1. Traumatic injury is the leading cause of death for 
persons under forty (40) years of age, and the third leading cause of death 
overall for persons of all ages. Traumatic injury is the leading cause of lost 
years of potential life for Oklahomans sixty-five (65) years of age and 
younger;
2. In addition to the physical and emotional losses 
that result from traumatic injury, the economic costs of such injuries . . . far 
exceed losses for other diseases such as cancer, heart disease, stroke and 
diabetes;
3. Trauma systems dramatically reduce morbidity and 
mortality from major injuries; and
4. Development and improvement of trauma systems is 
beneficial to all citizens.
63 O.S.Supp.2013, § 
1-2530.1(A).
¶3 Currently, the Fund pays 90% of all monies collected by it to reimburse 
"trauma facilities, licensed ambulance service providers and physicians." 
63 O.S.Supp.2013, § 
1-2530.9(A)(1). The State 
Department of Health reports that these expenditures have, on average, come to 
about $12 million per six-month period since October 2010, much of which has 
reimbursed hospitals at only about 60% of the amount originally billed.[1] The Fund's ability to 
make these payments arises from several different sources specified in 
Oklahoma's statutes. These revenue sources include special assessments, fines, 
court costs, fees, and taxes; many of these funding sources are closely related 
to motor vehicles and conduct that makes motor vehicle travel more 
dangerous.
¶4 First, many criminal violations of Oklahoma law, irrespective of any 
sentence imposed, come with a special assessment of $100 to be deposited into 
the Fund. Many of these crimes involve the use of controlled dangerous 
substances. 21 O.S.2011, § 
1220(B) (imposing special assessment for open container of alcohol crimes); 
63 O.S.2011 & Supp.2013, §§ 
2-401(I), 2-402(D), 2-404(D), 2-405(F), 2-406(D), 2-407(F), 2-407.1(F), 
2-415(E) (imposing special assessment for controlled dangerous substance and 
other drug-related crimes). Additionally, Oklahoma law requires that drivers pay 
a special assessment of $200 when requesting that a driver's license be 
reinstated after having been revoked or suspended for certain reasons. 
47 O.S.Supp.2013, § 
6-212(C)(2)(b)(1).
¶5 Second, certain crimes related to the operation of vehicles may be 
punished with fines, and in the event that a fine is imposed for those crimes, 
either one half or all of such fines are deposited into the Fund. 
47 O.S.2011, § 6-303(H) (requiring all fines 
collected for certain driving with suspended or revoked license crimes be 
deposited into Fund); id. §§ 17-101(F), 17-102(C) (requiring one-half of 
fines collected from Uniform Vehicle Code violations be deposited into Fund). 
Third, Oklahoma's district courts deposit some court costs collected from 
convicted criminal defendants into the Fund. 28 O.S.2011, § 153(J)(5). Fourth, certain 
fees related to motor vehicles, including drivers' license fees and a special 
fee collected during vehicle registration, are deposited into the Fund. 
47 O.S.Supp.2013, § 
6-101(I)(1); 63 O.S.2011, § 
4021(I). Lastly, a portion of Oklahoma's cigarette and tobacco product excise 
taxes flows into the Fund. 68 O.S.2011, §§ 302-5(B)(3), (D)(3); 
402-3(B)(3), (C)(3).[2]
¶6 On June 3, 2014, the Governor signed Senate Bill 2127 ("SB 2127"). Senate 
Bill 2127 transferred $5 million from the Trauma Care Assistance Revolving Fund 
to the Special Cash Fund of the State Treasury to be appropriated for other 
uses. 2014 Okla. Sess. Laws ch. 420, § 162. The Special Cash Fund is a special 
fund available for appropriation or transfer by the Legislature. 
62 O.S.2011, § 253. Under SB 2127, the 
Legislature appropriated monies from the Special Cash Fund for a variety of 
purposes such as the operations of the Oklahoma House of Representatives. 2014 
Okla. Sess. Laws ch. 420, § 142.
¶7 The Legislature has thus diverted $5 million from the Fund to be 
appropriated for uses other than the purposes for which the Fund has been 
authorized. You ask whether this diversion violates Article X, Section 19 of the 
Oklahoma Constitution. We conclude that it does.
II.
Article X, Section 19 of the Oklahoma Constitution
¶8 The Oklahoma Constitution contains several limitations on the 
Legislature's taxing and spending powers, including the taxpayer protection 
provision at issue in Article X, Section 19. That section provides the 
following:


Every act enacted by the Legislature, and every ordinance and resolution 
passed by any county, city, town, or municipal board or local legislative body, 
levying a tax shall specify distinctly the purpose for which said tax is levied, 
and no tax levied and collected for one purpose shall ever be devoted to 
another purpose.
Okla. Const. art. X, § 19 (emphasis added).
¶9 The Oklahoma Supreme Court has articulated the overarching principles that 
govern interpretation of the Oklahoma Constitution. In South Tulsa Citizens 
Coalition, L.L.C. v. Arkansas River Bridge Authority, 176 P.3d 1217 (Okla. 2008), the Supreme Court stated the 
following: 


In construing and applying constitutional provisions, the intent of the 
framers and the people adopting it must be given effect. Absent an ambiguity, 
the intent is settled by the language of the provision itself, and the courts 
are not at liberty to search beyond the instrument for 
meaning.
Id. at 1220 (footnote omitted); see also Okla. Elec. Co-op., 
Inc. v. Okla. Gas & Elec. Co., 982 P.2d 512, 514 (Okla. 1999) (noting the controlling 
importance of intent and plain text when construing the Oklahoma Constitution); 
Draper v. State, 621 P.2d 1142, 1145-46 (Okla. 1980) (same); Latting 
v. Cordell, 172 P.2d 
397, 401 (Okla. 1946) (same); Shaw v. Grumbine, 278 P. 311, 315 (Okla. 1929) (same). 
¶10 Employing these principles, a plain reading of Article X, Section 19 of 
the Oklahoma Constitution reveals two relatively simple requirements. First, as 
applied to the Legislature, all statutes levying a tax must identify the purpose 
for which the tax is raised. Second, after announcing the tax's purpose, the 
Legislature may not devote any monies collected under that tax to any other 
purpose.
[3] However, the Oklahoma Supreme Court has created two 
exceptions with respect to the second requirement of Article X, Section 19.
¶11 First, as was recognized in early case law, surplus monies may be used 
for new purposes. As the court put it in Black v. Oklahoma Funding Bond 
Commission, 140 P.2d 
740 (Okla. 1943), the bar of Article X, Section 19 was "designed to prevent 
the concealment of the purpose of a tax levy and to prohibit the improper use of 
a fund after it has already been pledged" for a certain purpose. Id. at 
743. A "surplus" is "not the result of deliberation" but accrues "only 
incidentally." Id. Hence, where the "actual purposes and obligations for 
which the taxes were levied" have been "met, fully paid and therefore no longer 
exist," the monies may be used for other purposes because the purpose of Article 
X, Section 19 would already have been "fully served." Id. This exception 
is obviously not applicable here as the purpose of the trauma fund--primarily to 
reimburse trauma facilities--continues to exist. Indeed, given the continuing 
nature of revolving funds and their ongoing purposes, monies pledged to such 
funds would generally not result in a surplus satisfying this exception.
¶12 Second, the court has held that Article X, Section 23 of the Oklahoma 
Constitution partly amended Article X, Section 19 to allow in certain instances 
for the Legislature to use tax revenues for different purposes than that for 
which the tax was levied. Article X, Section 23 creates a system under which the 
State's Board of Equalization certifies to the Legislature a forecast of the 
State's revenues; this certification provides a basis for the Legislature's 
maximum appropriations for each fiscal year. Okla. Const. art. X, § 23(1)-(2). 
Section 23 of Article X also allows the Legislature to attempt to raise 
additional revenues, make certain new appropriations, and--most important for 
our purposes here--to make certain transfers of existing state funds:


All appropriations made in excess of [the Board of Equalization's] 
certification shall be null and void; provided, however, that the 
Legislature may . . . enact laws . . . transferring 
the existing revenues or unappropriated cash on hand from one fund to another 
. . . .
Okla. Const. art. X, § 23(2) (emphasis added). Because the question here 
involves the transfer of cash on hand in the Trauma Care Assistance Revolving 
Fund, we will consider only that portion of Section 23 and how it interacts with 
Section 19 of the Oklahoma Constitution.
¶13 Looking to the principles articulated above that the "intent of the 
framers" must be controlling in construing a constitutional provision and that 
the "intent is settled by the language of the provision itself," the effect of 
Article X, Section 23 becomes clearer. It is entirely possible that tax revenues 
raised for one purpose will become cash on hand in one fund or another without 
having already been appropriated. In these circumstances, the Legislature may 
transfer monies and use them for purposes not authorized in the relevant taxing 
statute. See State ex rel. Hawkins v. Okla. Tax Comm'n, 
462 P.2d 536, 541 (Okla. 1969) (noting 
that Okla. Const. art. X, § 23 modifies Okla. Const. art. X, § 19).
¶14 Some might argue that prior Oklahoma Supreme Court decisions could be 
read as endorsing a near-limitless transfer power that renders Article X, 
Section 19 all but a dead letter as a limitation on the Legislature's power to 
repurpose tax revenues. We disagree. One recent such decision, Calvey v. 
Daxon, 997 P.2d 
164 (Okla. 2000), raised the question of whether bills authorizing transfers 
from various fee-generated funds to the Special Cash 
Fund constituted revenue-raising bills and hence violated the relevant 
constitutional provisions governing such bills. Id. at 166. Although the 
court observed that Article X, Section 23 authorizes transfers from the funds 
there in support of its overall holding that such transfers from 
fee-generated funds did not constitute new revenues, id. at 
171-72, the court had no occasion to address the tax provision of Article X, 
Section 19 because no tax revenues were transferred--only fee-generated 
revenues.
¶15 In City of Sand Springs v. Department of Public Welfare, 
608 P.2d 1139 (Okla. 1980), the court 
allowed sales tax revenues to be used to construct a facility for delinquent 
children, despite petitioners' claim that the use violated Article X, Section 
19. See City of Sand Springs, 608 P.2d at 1143. The case, however, turned 
on facts that are not present here. First, the majority of the tax revenues at 
issue had been collected pursuant to a 1965 statute that authorized the levy for 
broad purposes, including "the support of functions of State 
government" and to provide services to "delinquent children." Id. at 
1147-48 (quoting 68 O.S.Supp.1965, § 
1303). Thus, Okla. Const. art. X, § 19 was clearly not violated with regard 
to most of the tax revenues at issue, as building a juvenile delinquent facility 
was squarely within the purposes for which the tax was collected. The Article X, 
Section 19 issue related solely to tax revenues remaining in the fund that had 
been collected prior to the 1965 statute, pursuant to the 1963 
version of the Sales Tax Code, which included slightly narrower purposes, 
including the aid of "needy dependent children, crippled children, . . . 
providing services to homeless and neglected children" and a few other 
categories. Id. at 1147 (quoting 68 O.S.Supp.1963, § 1303). And while the fund 
where the sales tax revenues resided was an appropriated fund controlled by the 
Department of Public Welfare, see 56 O.S.Supp.1965, §§ 179, 181a, the Supreme Court 
interpreted Article X, Section 23 as allowing the transfer. In so concluding, 
however, the Supreme Court was relying on the pre-1975 version of Article X, 
Section 23, which did not contain the "unappropriated cash on 
hand" language contained in the current version. Compare S.J. Res. No. 6, 
S.Q. No. 506, Leg. Refer. No. 206, (July 22, 1975) available at 
https://www.sos.ok.gov/gov/questions.aspx (last visited Sept. 12, 2014), 
with Sand Springs, 608 P.2d at 1147-48 (quoting the pre-1975 
version).
¶16 In short, the Supreme Court decided Sand Springs to address a 
dispute from the late 1970s raising concerns about the mere possibility that 
revenues collected in a two-year window during the early 1960s could prevent 
spending on a related but admittedly different purpose in 1980. To the extent 
that the case stands for the proposition that the Legislature has carte 
blanche to transfer fully appropriated tax money in one fund to the Special 
Cash Fund for spending on unrelated purposes, the case would be inconsistent 
with the intent of the Oklahoma voters who approved Article X, Section 23 and 
with the principles of constitutional interpretation articulated by the Supreme 
Court.
¶17 If Sand Springs were thought to have such breadth, the case would 
reduce Article X, Section 19 to a practical nullity with respect to the Oklahoma 
Legislature. It strains credulity to believe that the voters who approved the 
budget balancing amendment creating Article X, Section 23's broad system would 
have intended this result, particularly given that Section 19, at its core, is a 
taxpayer protection provision. See Hawkins, 462 P.2d at 540 
(discussing the context surrounding the amendment's passage). Understanding 
Sand Springs to authorize a broad transfer power would thus violate the 
foundational principle of effectuating the framers' intent as well as the 
principle that constitutional provisions should be interpreted "in such a way 
that they harmonize with each other." See Movants to Quash Grand Jury 
Subpoenas Issued in Multicounty Grand Jury Case No. CJ-92-4110, 
839 P.2d 655, 656 (Okla. 1992).
¶18 We thus interpret Article X, Section 23 in line with its own text to 
authorize the transfer of "unappropriated cash on hand." Article X, Section 19 
"has been modified to that extent." Hawkins, 462 P.2d at 541. Article X, 
Section 23 does not allow the transfer and use of appropriated tax monies for 
purposes other than those for which they were originally collected and 
appropriated.
¶19 Hence, we conclude that Article X, Section 19 by its own text imposes two 
requirements. First, every statute imposing a tax must state a purpose for that 
tax. Second, all tax money collected pursuant to that tax may only be used for 
the purpose stated in the tax's authorizing statute. This second requirement has 
two exceptions. First, a "surplus" may be transferred and used for other 
purposes after the original purposes for the tax have already been completely 
met and exhausted. Second, Article X, Section 23 creates a "transfer" exception 
allowing only the Legislature to transfer tax money that has not already been 
appropriated.
II.
The Legislature's Transfer of Tax Monies From the Trauma Care Assistance 
Revolving Fund to the Special Cash Fund and Subsequent Appropriation of Such 
Monies to Other Uses Violates Article X, Section 19 of the Oklahoma 
Constitution.
¶20 The Trauma Care Assistance Revolving Fund and SB 2127, as described 
above, have three salient features. First, some of the money accruing to the 
Fund arises from cigarette and tobacco taxes. 68 O.S.2011, §§ 302-5(B)(3), (D)(3); 
402-3(B)(3), (C)(3). Second, all money paid into the Fund is "appropriated and 
may be budgeted and expended by the Department." 63 O.S.Supp.2013, § 
1-2530.9(A). Third, the money 
has been used for purposes other than those involving trauma care. See 
2014 Okla. Sess. Laws ch. 420, §§ 133-135, 142-143.
¶21 Applying Article X, Section 19 to the Fund, we look to whether the 
purpose requirement was met as well as what purpose was stated. The cigarette 
and tobacco tax statutes mandate that revenues generated by the taxes be 
apportioned between various funds, including the Trauma Care Assistance 
Revolving Fund. See 68 O.S.2011, §§ 302-5, 402-3. The portion of 
these taxes directed to the Fund are thus purposed to be used for the Fund and 
the uses for which that Fund was created. The tax thus meets the first 
requirement of Article X, Section 19, and unless one of the two exceptions to 
Article X, Section 19 applies, the tax revenues in the Fund must be used for the 
Fund's purposes.
¶22 There is no hint that the "surplus" exception would be relevant. The Fund 
continues to operate and pay out money to hospitals, ambulance services, and 
doctors. The "transfer" exception also cannot apply because all of the money in 
the Fund has been appropriated per the Fund's statute. 63 O.S.Supp.2013, § 
1-2530.9. Hence, any use of the 
tax revenues for purposes other than trauma care purposes would violate Article 
X, Section 19 of the Oklahoma Constitution.
¶23 Senate Bill 2127 does just that. The bill diverted some $5 million from 
the Fund to the Special Cash Fund. 2014 Okla. Sess. Laws ch. 420, § 162. The 
bill then appropriated money from the Special Cash Fund for a variety of 
purposes. Senate Bill 2127 thus violated Article X, Section 19 of the Oklahoma 
Constitution by transferring fully appropriated tax revenues for purposes other 
than those for which the taxes were levied. We recognize that it is likely that 
not all of the transferred money arose from tax revenues because the Fund's 
sources include fees, assessments, fines, and taxes.
[4] Thus, to the extent it is 
possible to accurately account for the sources of the transferred money, that 
portion of the transferred money derived from the cigarette and tobacco taxes 
must be considered transferred in violation of Article X, Section 19.


¶24 It is, therefore, the official Opinion of the Attorney General that:
1. Article X, Section 19 of the Oklahoma Constitution imposes two 
requirements: statutes levying taxes must state a purpose for those taxes, and 
all tax money collected pursuant to such statutes may only be used for those 
purposes stated in the authorizing statute.
2. Article X, Section 19's second requirement has a "surplus" exception. 
Black v. Okla. Funding Bond Comm'n, 140 P.2d 740, 743 (Okla. 1943). Tax money may be used 
for purposes different from those stated in the authorizing statute when the 
original purpose has already been completely met and exhausted. Given the 
continuing nature of revolving funds and their ongoing purposes, monies pledged 
to such funds would generally not result in a surplus satisfying this 
exception.
3. Article X, Section 19's second requirement also has a "transfer" 
exception. Article X, Section 23 of the Oklahoma Constitution has amended 
Article X, Section 19 to authorize the Legislature to transfer tax money that 
has not already been appropriated to be spent on purposes other than those 
stated in the tax's authorizing statute. However, tax money that has been 
appropriated cannot be so transferred and used because of Article X, Section 
19's second requirement.
4. The Legislature's transfer of tax revenues from the Trauma Care Assistance 
Revolving Fund to the Special Cash Fund to be used for purposes other than 
trauma care under SB 2127 violated Article X, Section 19 of the Oklahoma 
Constitution.
E. SCOTT PRUITT
Attorney General of Oklahoma
JARED HAINES
Assistant Solicitor General 
FOOTNOTES
[1] Oklahoma State Department 
of Health, Trauma Fund Distribution Report: 2014 April p.1, available at 
http://www.ok.gov/health2/documents/RecipientList08142014.pdf (last visited Nov. 
13, 2014). 
[2] Many of these criminal fines, costs, and special 
assessments flow through the Oklahoma district courts that collect them. 
Oklahoma law provides that some of these amounts are to be retained by the 
district courts to defray their collection expenses. 19 O.S.Supp.2013, § 220. 
[3] By using such a broad word as "devote" rather than more 
narrow words such as "appropriate," "spend," "transfer," or otherwise, the 
provision's drafters clearly intended to cover a multitude of uses of money. Any 
use the Legislature would make of any tax money must conform to the original 
purpose stated in the tax statute.
[4] We offer no opinion on whether the transfer of non-tax 
funds was proper except to state that each source of funds must be considered 
individually in light of applicable constitutional 
provisions.




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 142, 839 P.2d 655, 63 OBJ 3020, Movants to Quash Grand Jury Subpoenas Issued in Multicounty Grand Jury Case No. CJ-92-4110 Before Dist. Court of Oklahoma County v. Powers
Cited
 1946 OK 217, 172 P.2d 397, 197 Okla. 369, LATTING v. CORDELL
Cited
 1969 OK 118, 462 P.2d 536, STATE EX REL. HAWKINS v. OKLAHOMA TAX COMMISSION
Cited
 1929 OK 116, 278 P. 311, 137 Okla. 95, SHAW v. GRUMBINE
Cited
 2008 OK 4, 176 P.3d 1217, SOUTH TULSA CITIZENS COALITION L.L.C. v. ARKANSAS RIVER BRIDGE AUTHORITY
Cited
 1980 OK 36, 608 P.2d 1139, City of Sand Springs v. Department of Public Welfare
Cited
 1980 OK 117, 621 P.2d 1142, Draper v. State
Cited
 2000 OK 17, 997 P.2d 164, 71 OBJ 721, Calvey v. Daxon
Cited
 1999 OK 35, 982 P.2d 512, 70 OBJ 1366, Oklahoma Electric Cooperative, Inc. v. Oklahoma Gas and Electric Co.
Cited
 1943 OK 270, 140 P.2d 740, 193 Okla. 1, BLACK v. OKLAHOMA FUNDING BOND COMM'N
Discussed
Title 19. Counties and County Officers
 Cite
Name
Level

 19 O.S. 220, Creation of Court Clerk's Revolving Fund
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 1220, Transporting Open Containers of Intoxicating Beverages or Low Point Beer - Exception - Penalty
Cited
Title 28. Fees
 Cite
Name
Level

 28 O.S. 153, Costs in Criminal Cases
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 6-303, Driving While License Under Suspension or Revocation - Penalties
Cited
 47 O.S. 6-212, Conditions for Reinstatement
Cited
 47 O.S. 6-101, Class Requirements for Driver Licenses
Cited
Title 56. Poor Persons
 Cite
Name
Level

 56 O.S. 179, Repealed by Laws 1986, HB 1625, c. 247, § 34, emerg. eff. June 13, 1986
Cited
Title 62. Public Finance
 Cite
Name
Level

 62 O.S. 253, Creation of Special Cash Fund
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 4021, Fees Required with Application
Cited
 63 O.S. 1-2530.1, Legislative Findings
Discussed
 63 O.S. 1-2530.9, Trauma Care Assistance Revolving Fund
Discussed at Length
 63 O.S. 2-401, Prohibited Acts A - Penalties
Cited
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 302-5, Additional Tax on Sale, Use, Gift, Possession, or Consumption of Cigarettes - Rate - Apportionment
Discussed at Length
 68 O.S. 1303, Repealed by Laws 1981, SB 227, c. 313, § 3, emerg. eff. June 29, 1981
Discussed